SPRAYBERRY *v.* THE CITY OF ATLANTA.

1. Under the charter of the city of Atlanta, giving the mayor and general council full power to pass such ordinances as may seem to them proper for the security, peace, health, order and good government of the city, and to regulate the retail of ardent spirits within its corporate limits, and at their discretion to issue license to retail or to withhold the same, etc., they have the power to ordain that the conviction in a State court of any person licensed to retail spirituous or malt liquors, for the violation of the State statute in relation to the sale of ardent spirits to a minor or a person already intoxicated, or the conviction of a retailer before the recorder's court for the violation of any of the provisions of the city ordinance regulating the issuance of licenses for retailing, shall work an immediate revocation of the license of such person, and that for any further exercise of the privilege granted by such license he shall be punished as one retailing without license. (R.)

2. The granting of a license to sell liquor is an exercise of police power. Such license is not a contract, but only a permission to enjoy the privilege on the terms stated, for a specified time, unless it be sooner abrogated, and by its revocation the citizen is not deprived of his property without due process of law. (R.)

3. Where the licensee was informed by the license itself, as well as by the ordinance under which it was granted, that his conviction of selling liquor to a minor would work its immediate revocation, and where he pleaded guilty to an indictment for that offence and paid the fine imposed by the sentence of the court, his notice of the revocation was ample. Having applied for and accepted the license under the ordinance, he assented to the condition therein contained, and has no right now to insist that it shall be adjudged forfeited by a judicial tribunal. (R.)

4. The conviction on the indictment was final until it was properly set aside. It was so treated by the licensee in this case for more than a month, and until he was charged in the municipal court with retailing without license. (R.)

April 20, 1891.

Municipal corporations. Liquor licenses. Powers. Notice. Judgments. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1890.

Reported in the decision.

ARNOLD & ARNOLD, for plaintiff in error.

J. B. GOODWIN and J. A. ANDERSON, *contra.*

SIMMONS, Justice.

The charter of the city of Atlanta provides that "the mayor and general council shall have full power and authority to pass all by-laws and ordinances . . for the prevention and punishment of disorderly conduct and conduct liable to disturb the peace and tranquillity of any citizen or citizens thereof; and every other by-law, regulation and ordinance that may seem to them proper for the security, for the peace, health, order and good government of said city." Acts 1874, p. 119, §15. The charter also provides that the mayor and general council "shall have full power and authority to regulate the retail of ardent spirits within the corporate limits of said city, and at their discretion to issue license to retail or to withhold the same, and to fix the price to be paid for license at any sum they may think proper, not exceeding two thousand dollars." *Id.* p. 122, §27.

Under these provisions of the charter, the mayor and general council passed an ordinance prescribing the manner of issuing licenses for the retail of liquors, the limits or streets in which licenses might be granted, and the manner of keeping places licensed for this purpose, etc. The 14th section of the ordinance provided as follows:

"The mayor and general council shall forfeit the license of any dealer of either spirituous or lager beer or malt liquors, whose place becomes a nuisance by disorder, threat or otherwise. · The conviction in a State court of any person licensed to retail spirituous or malt liquors, for the violation of the State statute in relation to the sale of ardent spirits to a minor or a person already intoxicated, or the conviction of a retailer before the recorder's court for the violation of any of the provisions of this ordinance, shall work an immediate revocation of the license of such person; and for any further exercise of the privilege granted by such license he shall be punished as one retailing without license."

Under this ordinance Sprayberry, the plaintiff in

error, applied for and obtained a license to retail ardent spirits in the city of Atlanta. The license contained a clause reciting that it was "subject to be revoked whenever the ordinances of the city or the laws of the State of Georgia are violated by the holder of this license." Subsequently he was convicted in the superior court of Fulton county of the offence of selling liquor to a minor. After this conviction he continued the sale of liquors, and he was summoned to appear before the recorder's court and answer to the charge of retailing spirituous and malt liquors without license from the mayor and general council. He appeared, and in answer to the charge exhibited the license he had obtained from the mayor and general council, and claimed that he was not guilty. The recorder held that upon his conviction in the superior court for the offence of selling liquor to a minor, his license, under the above section of the ordinance, was revoked, and that he was guilty of the offence charged; and a fine of $100 was imposed upon him, with the alternative that, upon his failure to pay the fine, he be put to labor for 30 days upon the public works. He thereupon sued out a writ of *certiorari* to the superior court, alleging as error that the judgment was contrary to law and the evidence; that the proper authorities had not revoked his license, and that no court of competent jurisdiction had adjudged the same to be forfeited; that the section of the ordinance in question was invalid and *ultra vires*, as punishing a crime by forfeiture; that he could not be punished for retailing without license until his license had been revoked in a proceeding for that purpose before some competent tribunal; that the city of Atlanta had no power to punish offenders by forfeiture of property or otherwise; that the plea of guilty and the sentence of the superior court were not final, but were subject to be set aside and annulled, and that a motion for that

purpose was undisposed of; and that the city of Atlanta had no power to pass an ordinance for the punishment of persons retailing liquors without license, the statutes of the State having exhausted the subject. Upon the hearing of the case in the superior court, the *certiorari* was overruled, and Sprayberry excepted.

It was insisted before us by counsel for the plaintiff in error, that the mayor and general council had no power, under the charter, to pass the ordinance in question; that the effect of the ordinance was to revoke the license, which could not be done until a proceeding for that purpose had been instituted before some competent tribunal; that Sprayberry had a property right in the license, which could not be taken from him in this summary manner; and that the ordinance was invalid and *ultra vires* as punishing a crime by forfeiture. Under the clauses of the charter above quoted, we think the mayor and general council had full power and authority to pass the ordinance complained of. They have power to pass any ordinance that may seem to them proper for the security, the peace, order and good government of the city. They also have power to regulate the retail of ardent spirits, and in their discretion to issue license or withhold the same. It is now well-settled that the issuing of a license to retail liquors is not a contract, but is a permission to the licensee to engage in the business under such restrictions, conditions and limitations as may appear judicious to the authority issuing the license. The license not being a contract, the privilege granted thereby may be revoked at any time, and the business of selling liquor prohibited by the proper authorities. Under the charter the mayor and general council have power to grant licenses for the sale of liquors, or to prohibit the sale altogether by refusal to issue licenses. If they have the power to prohibit the sale altogether by refusal to issue license therefor, they

certainly have the right to issue license under such restrictions, conditions and limitations as may seem proper to them.   The power to regulate also confers upon the mayor and general council the right to impose such terms and conditions upon the licensee as they may see fit and proper.   They may impose a condition that he shall keep an orderly house, that he shall close his place of business at a certain hour of the night, that he shall not have a screen between the door and his counter; and we think they can also impose a condition that upon his conviction of a violation of a State law or of a city ordinance regulating the sale of liquors, his license shall be *ipso facto* revoked.   In the case of Schwuchow *v.* Chicago, 68 Ill. 444, it was held that "Where power is conferred on a city to prohibit entirely the sale of intoxicating liquors, or to regulate and license the same, at discretion, the city may grant the privilege of selling such liquors on such terms and conditions as it may see fit to impose, and has ample power to impose, as a condition, that a license granted shall be subject to revocation on the violation of any of the ordinances regulating the traffic.   In such a case, where absolute control over the whole subject of granting licenses is conferred, the city may impose any other conditions calculated to protect the community, preserve order and suppress vice, such as the closing of the grocery on election days, holidays or Sundays, or the closing of the same at a particular hour each evening, etc., and for a violation of any of these conditions provide for a forfeiture of the license.   Such power grows out of the fact that it is discretionary to prohibit the sale, or license it on such terms as the city may choose."   In Wiggins *v.* Chicago, *Id.* 372, it was held that "The power to tax, license and regulate auctioneers, etc., authorizes the city authorities to adopt any reasonable ordinance for the purpose, and the city may tax, may

license, and may regulate the business, and the ordinance may properly empower the mayor to revoke the license for cause." Launder *v.* Chicago, 111 Ill. 291; Optumwa *v.* Schaub, 52 Iowa, 515; Hildreth *v.* Crawford, 21 N. W. Rep. 667; *In re* Bickerstaff, 8 Crim. L. Mag. and Rep. 297; 11 Pac. 393; Martin *v.* The State, 36 N. W. 554; People *v.* Meyers, 95 N. Y. 223; Horr and Bemis Munic. Police Ord. §266; and 7 Crim. L. Mag. & Rep. 142–6.

But it is insisted by the plaintiff in error that the license to sell liquor is a property right, and that this property right cannot be taken from him without a judgment by a competent tribunal. We have already seen that a license to sell liquor is not a contract, but only a permission to enjoy the privilege on the terms named, for a specified time, unless it be sooner abrogated. The granting of the license is an exercise of police power, and does not include any contractual relations whatever. "The contracts which the constitution protects are those that relate to property rights, not governmental." Stone *v.* Mississippi, 101 U. S. 820. The license being a mere privilege to carry on a business subject to the will of the grantor, it is not property in the sense which protects it under the constitution. The revocation of the license does not deprive the citizen of his liberty or his property without due process of law. "The vesting by legislative authority, of the power to license various occupations and professions, requiring skill in their exercise, or the observance of the law of hygiene, or the like, has never been construed to be obnoxious to these objections. It has been uniformly held that laws providing by accustomed modes for the licensing of physicians, lawyers, pilots, butchers, bakers, liquor-dealers, and in fact all trades, professions and callings, interfere with no natural rights of the citizen secured by our constitution." McDonald

*v.* State, 60 Am. Rep. 161, and authorities there cited. In the case of Metropolitan Board of Excise *v.* Barrie, 34 N. Y. 667, the Court of Appeals of that State, in discussing this subject, says : " The assumption is not even plausible that the act works a *deprivation* of prop· erty to any one within the meaning of the constitutional restrictions upon legislative authority. It in terms, it is true, revokes licenses granted under the act of 1857, but that is no encroachment upon any right secured to the citizen as inviolable by the fundamental law. These licenses to sell liquors are not contracts between the State and the persons licensed, giving the latter vested rights, protected on general principles and by the constitution of the United States against subsequent legislation ; nor are they property in any legal or constitutional sense. They have neither the qualities of a contract nor of property, but are merely temporary permits to do what otherwise would be an offence against a general law. They form a portion of the internal police system of the State ; are issued in the exercise of its police powers, and are subject to the direction of the State government, which may modify, revoke or continue them as it may deem fit. If the act of 1857 had declared that licenses under it should be irrevocable (which it does not, but by its very terms they are revocable), the legislatures of subsequent years would not have been bound by the declaration. The necessary powers of the legislature over all subjects of internal police, being a part of the general grant of power given by the constitution, cannot be sold, given away or relinquished." See also Schwuchow *v.* Chicago, *supra.* The license to sell liquor, therefore, not being property, the mayor and general council had the right under the charter to pass the ordinance which declares that a conviction as specified therein shall work an immediate revocation of the license. In our opinion

this ordinance was a wise and reasonable one. The facts of this case show the necessity of it. Sprayberry violated the statute of the State by selling liquor to a minor. He was indicted, filed a plea of guilty, was sentenced by the court to pay a fine, and paid it. He was charged in the recorder's court with retailing liquors without a license on the 16th of February, and was summoned to appear for trial on the 22d. The record discloses that on the 21st of February, he filed a petition in the superior court to set aside his conviction therein for the offence of selling liquor to a minor; and upon his trial in the recorder's court on the 22d, he filed a certified copy of this petition to the superior court, and asked that the case in the recorder's court be continued until the petition in the superior court had been acted upon. If the motion to continue had been granted on this ground, he could have prolonged the litigation in the superior court until his license had expired. This shows the wisdom and the necessity of the ordinance.

But it is claimed that he ought to have been notified by the mayor and council that his license had been revoked; that unless this was done, he must try the case himself and determine for himself whether it had been revoked or not by his conviction. What was the necessity of any notice to him? His license informed him that it was subject to be revoked. The law under which the license was granted informed him that his conviction would work an immediate revocation. What more notice could he desire? What other trial could he wish than the one he had already had in the superior court? When he was convicted there, the notice was ample that it operated as a revocation of his license. Nothing that he could have said or done before the mayor and council would have changed the record of his conviction; they would have had no discretion in

the matter; the law was as imperative upon them as it was upon him. Upon the subject of the immediate revocation of a license by a violation of the condition upon which it is issued, the Court of Appeals of New York in the case of The People *v.* Meyers, 95 N. Y. 223, say : "Under the provision of the excise act of 1873, which provides that a conviction for a violation of any provision of said act, or of the acts thereby amended, by any person or at any place licensed as therein provided, shall forfeit the license, and authorizes the board of excise upon being satisfied of a violation of any such provision to cancel or revoke the license, a conviction of a bar-tender of a licensed person for an offence under the act, committed at the place licensed, operates *ipso facto* to annul the license. The act casts upon the licensee the necessity, in order to protect himself in the enjoyment of his license, of seeing to it that no violation shall be committed upon the licensed premises. . . It is competent for the legislature to prescribe such a cause of forfeiture." In the case of The People *v.* Tighe, 12 N. Y. 25, it was held that the conviction of a licensee under any of the provisions of the act of 1873, *ipso facto* annuls his license. Moreover, we think that when Sprayberry applied for and accepted a license under this ordinance, he assented to the condition contained therein, and he has no right now to insist that it shall be adjudged forfeited by a judicial tribunal. He knew this to be the law when he applied for and accepted the license, and he knew that these terms, conditions and restrictions were put upon him by his acceptance of it. He knew that when he was indicted and convicted for a violation of the State law, it worked an immediate revocation of the license. By what right then can he claim that he was entitled to have any further notice or entitled to have a trial to determine whether the license was revoked

or not ?  In the case of Schwuchow *v.* Chicago, *supra,* it was held that "where a party applies for and accepts a license under an ordinance imposing conditions and restrictions, and the license itself contains a condition that it may be revoked at the discretion of the mayor, he thereby assents to the terms and conditions imposed, both in the license and the ordinance under which it is issued."   In the case of Wiggins *v.* Chicago, *supra,* it was held that "when a party accepts a license from the mayor of a city, under an ordinance empowering the mayor to revoke for cause, and the license recites that it may be revoked by the mayor at any time, in his discretion, he will have no ground to say that the mayor has no power, and that it can only be revoked by a judicial sentence."

It was also insisted that the conviction was not final, because it was subject to be set aside, and a motion for that purpose was undisposed of.  In reply it is sufficient to say that under the facts of this case the judgment seems to have been treated as final until the charge was made against Sprayberry in the recorder's court.  As before remarked, judgment of conviction was pronounced against him in the superior court on the 17th of January, and he paid the fine and costs, and no motion to set the judgment aside was made until the 21st of February, after the charge in the recorder's court had been preferred.  After his attention was thus called to the effect of his conviction in the superior court, no doubt he wished to set aside that conviction or to litigate about it until his license should expire.  But outside of the particular facts above mentioned, we think that the conviction in this case was final until it was properly set aside.

These are the only questions in the case that we deem it necessary to discuss.     *Judgment affirmed.*
v 87-9