## Cassidy, et al. v. Drake.

(Decided May 23, 1913.)

Appeal from Fayette Circuit Court.

1. Intoxicating Liquors—Licenses.—A municipality may, by ordinance enacted under statutory authority, not only make it unlawful for one to sell intoxicating liquors on Sundays, election days, or holidays, but may restrict the sale to certain hours of the day time, or require saloons to be closed during the hours of the night.

2. Licenses—Revocation of.—A municipality may make it a condition in granting a liquor license, that it shall be revoked by the Mayor if the licensee shall be convicted of violating the ordinance by keeping his saloon open on Sunday.

3. Licenses—Revocation of—Where a Ministerial Duty.—Where a municipal ordinance provided that a liquor license should be revoked by the Mayor upon a conviction of the licensee for selling liquor on Sunday, the Mayor performed a mere ministerial duty in revoking the license, and it was not necessary for him to give the licensee notice, or a hearing, before the license could be revoked.

4. Licenses—Revocation of on Conviction of Bar Tender.—Where a bar tender appeared in person at the city clerk's office and represented to the clerk that he was the owner of the saloon, and received the license, signing for it in the name of the owner, and executed a bond in the name of the owner, without disclosing the fact that he was the bar tender, and a different person, the conviction of the bar tender for selling liquor on Sunday is sufficient to authorize a revocation of the license which had been taken by the bar tender in the name of the real owner.

J. EMBRY ALLEN for appellants.

WALLACE MUIR for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The judgment appealed from in this case perpetually enjoined the appellant J. Ernest Cassidy, Mayor of the City of Lexington, and his subordinate officers, from revoking the saloon license of the appellee, Mrs. L. C. Drake.

Section 123 of the Revised Ordinances of the City of Lexington, makes it unlawful for the keeper of a saloon to keep it open for any purpose, or to permit the sale of liquor therein, on Sunday between the hours of 12 o'clock midnight and four o'clock in the morning, and provides a penalty of a fine of not less than ten dollars nor more than fifty dollars for each offense, and a revocation of his license.

Section 124 of said ordinance further provides that every license issued in pursuance thereto, shall be issued with the distinct agreement, understanding and condition that the same shall be revoked by the Mayor for the violation of any provision of said ordinance.

It is further provided by ordinance, as follows:

"Section 1. Whenever any person, firm, company or corporation conducting a coffee house under a license granted under the ordinances of the City of Lexington, shall be convicted, in a court having competent jurisdiction, of keeping open such coffee house, or permitting therein the sale of beer, ale or spirituous liquors on Sunday or between the hours of 12:30 a. m. and 4:30 a. m. or of permitting any woman to enter such coffee house or loiter around the doors thereof, or of permitting gambling, rioting, or disorderly conduct therein, and a copy of the judgment of conviction be certified to the Mayor, it shall be the duty of the Mayor to revoke said license immediately, and no appeal from such judgment of conviction shall operate to suspend the power of the Mayor to revoke such license.

"Section 2. If the Mayor shall be informed by any citizen, under oath, or by the written statement of any member of the Ways and Means Committee, or of any police officer, that the laws mentioned in Section 1, herein, are being violated by any person, firm, company or corporation or by any employees of any person, firm, company or corporation, in the conduct of any coffee house, it shall be the duty of the Mayor to immediately notify the person, firm, company or corporation so offending, to whom a license has been issued, to appear at his office within twenty-four hours, at a time to be designated in said notice, and show cause, if any, under oath, why such license should not be revoked. If at said hearing, the Mayor shall be satisfied, from the evidence, of the guilt of such offender, it shall be the duty of the Mayor to revoke the license immediately."

In March, 1911, a saloon license was issued to William Drake, who appeared in person at the City Clerk's office of the City of Lexington and represented to the clerk that he was L. C. Drake, who owned the saloon in question. William Drake is the son of Mrs. L. C. Drake. William Drake received the license; signed for it in the name of L. C. Drake, and executed the required bond by signing his name as L. C. Drake, without disclosing the fact that he was William Drake. The license ran for

one year from March 1, 1911. On Sunday, January 28, 1912, William Drake was in charge of the saloon in question as bar tender. It appears from the petition that his mother, Mrs. L. C. Drake, was a non-resident of Kentucky. On the next day William Drake was convicted in the Police Court of the City of Lexington, a court having jurisdiction, of the offense of keeping open said saloon on the preceding Sunday in violation of the ordinance. On January 30, 1912, the fact of said conviction of William Drake was certified to the Mayor, who, pursuant to the authority vested in him by the ordinances above quoted, revoked the license which had been issued to William Drake in the name of L. C. Drake, and thereupon ordered the Chief of Police of the City of Lexington to close the saloon of L. C. Drake. Thereupon L. C. Drake brought this action to enjoin the Mayor and his executive officers from enforcing the forfeiture or closing her saloon; and the injunction having been granted, the Mayor prosecutes this appeal.

The facts are not disputed. The appellee, however, asks that the judgment be affirmed upon two grounds: First, because it is not permissible for the city of Lexington, by an ordinance, to forfeit appellee's liquor license without giving her notice and a hearing of the charge before the proper city officials; and, Secondly, that granting the city might properly so proceed without any hearing other than the criminal proceeding, it could not forfeit the license of the owner of a saloon on the conviction of a bar tender or agent.

1. Lexington is a city of the second class, and subsection 10 of section 3058 of the Kentucky Statutes provides that the general council of cities of the second class may, by ordinance, restrain, regulate and prohibit the sale or giving away of any spirituous, vinous or malt liquors. Subsection 23 of the same statute further provides that the general council may impose, enforce and collect fines, forfeitures and penalties for the breach of any provision in said act, or in any ordinance.

In construing these statutes in McNulty v. Toof, 116 Ky., 202, this court held that the City of Paducah, a city of the second class, had the right to pass an ordinance prohibiting the sale of spirituous liquors between the hours of 10:30 p. m. and 5 o'clock a. m., and that such an ordinance was not an unreasonable regulation. There are many cases holding that a municipality may, by ordinance enacted under statutory authority, not only make

it unlawful to sell intoxicating liquors on Sundays, election days or holidays, but may restrict the sale to certain hours of the day time, or require saloons to be closed during the hours of the night. 23 Cyc., 83. The proposition is too well settled to be questioned. Commonwealth v. McCann, 29 Ky. L. R., 707, 94 S. W., 645.

Neither do we think there can be any doubt of the city's right to make it a condition in a liquor license that it shall be revoked by the Mayor if the licensee shall be convicted of violating the ordinance . by keeping his saloon open on Sunday.

This question was before the court in Sprayberry v. City of Atlanta, 87 Ga., 120. In that case the ordinance, as in the case before us, provided that the conviction of a retailer for the violation of any of the provisions of the ordinance should work an immediate revocation of the license of such offender. Sprayberry obtained a license as a retailer, and was subsequently convicted of the offense of selling liquor to a minor. In upholding the ordinance, the Supreme Court of Georgia said:

"But it is claimed that he ought to have been notified by the mayor and council that his license had been revoked; that unless this was done, he must try the case himself and determine for himself whether it had been revoked or not by his conviction. What was the necessity of any notice to him? His license informed him that it was subject to be revoked. The law under which the license was granted informed him that his conviction would work an immediate revocation. What more notice could he desire? What other trial could he wish than the one he had already had in the superior court? When he was convicted there, the notice was ample that it operated as a revocation of his license. Nothing that he could have said or done before the mayor and council would have changed the record of his conviction; they would have had no discretion in the matter; the law was as imperative upon them as it was upon him."

Again, in Martin v. State, 23 Neb., 371, the statute provided that any license issued by the Mayor and the council should be revoked by the Mayor and the council, upon the conviction of the licensee of any violation of any law, ordinance, or regulation pertaining to the sale of liquors. Martin was convicted of selling liquor on a Sunday, and the conviction having been certified to the city council, it revoked the license, under the statute, and without notice to the licensee. It was contended

there, as here, that before the mayor and council could legally revoke a license, notice should be given to the licensee in order that he might show cause, if he could, why the license should not be revoked. But, after discussing the question at length, the Supreme Court of Nebraska held that no notice was necessary, saying:

"In this case the statute makes no reference to the hearing of a complaint by the mayor and council, but simply provides that, 'the license shall be revoked, by the mayor and council, upon conviction of the licensee of any violation of any law, ordinance, or regulation, pertaining to the sale of such liquors,' etc. No trial or investigation could be had. The certificate of the police judge, showing a conviction of plaintiff in error, was before the council, they had but ·a simple ministerial duty to perform, in obedience to the plain mandate of the law, and that was to revoke the license. It is stipulated that he was convicted of the offense stated in the certificate of the police judge. It is admitted that the certificate was true. That being the case, no defense could have been made, and no notice was necessary to give the council jurisdiction."

A license to retail intoxicating liquors is not a contract; it vests no property rights in the licensee; and, when the law or the ordinance, under which it is issued, provides that the license shall be forfeited or revoked for any violation of the law, the licensee cannot complain that he is deprived of his property without due process of law.

See Board v. Barrie, 34 N. Y., 667: Sarlo v. Pulaski County, 76 Ark., 336, 88 S. W., 953; Sprayberry v. Atlanta, 87 Ga., 120; Moore v. Indianapolis, 120 Ind., 483.

It is plain, therefore, that the act of the Mayor of Lexington in revoking appellee's license upon the receipt of a certified copy of the judgment convicting the appellee, was a mere ministerial act, made in his administrative capacity, and was in no sense judicial. The judicial act which fixed appellee's guilt was the judgment of the police court, and no hearing, or any amount of evidence produced before the mayor, could have affected that judgment in any way. Appellee had his day in court when he was tried in the police court of Lexington; that satisfied every requirement of a valid conviction under the law of the land.

2.   There is no merit in the second contention of appellee, that the saloon license of Mrs. L. C. Drake could not be revoked by reason of the conviction of her bar keeper or agent.   This is true whether William Drake be regarded as the agent of his mother, or the owner of the saloon.   The ordinance expressly applies to any person who conducts a saloon; it is not limited to the conviction of the owner of the saloon, and it is clear that the ordinance could not be efficiently administered if it did not apply equally to all offenders under the statute. In Nadorff Bros. v. City of Louisville, 144 Ky., 135, the saloon license of the owner was revoked on proof that the bar tender had sold liquor on Sunday.   The question is, therefore, not an open one in this State.

Furthermore, although William Drake used his mother's name in procuring the license, he really acted for himself.   His mother was a non-resident, and was not known to the city in the transaction.

For the reasons indicated, the judgment of the chancellor is reversed, with instructions to dissolve the injunction, and to dismiss the petition.