OWENS *et al. v.* RUTHERFORD, Mayor, *et al.*

No. 15283.   OCTOBER 4, 1945.   REHEARING DENIED DECEMBER 3, 1945.

*Ralph R. Quillian,* for plaintiffs.   *Sam J. Welsch,* for defendants.

DUCKWORTH, Justice.   The gist of the complaint as brought in the present action is that the mayor and council of the City of Austell, in a county in Georgia which had voted in favor of taxing and controlling alcoholic beverages and liquors therein pursuant to the act of 1938 (Ga. L. 1937-38, Ex. Sess., p. 103; Code (Ann. Supp.), §§ 58-1001 et seq.), after having issued to the petitioners in 1945 licenses to sell at retail alcoholic liquors, arbitrarily and illegally revoked the same, notwithstanding that, under a certain ordinance providing for the taxing and licensing of "occupations and businesses hereinafter mentioned," it was necessary that legal cause be shown for such revocation, and that such action be first taken by the mayor with ratification thereafter by the city council.

The copy of the ordinance set out in the petition fails to list the businesses to be licensed thereunder, and hence it is not shown that the business of selling intoxicating liquors was within the purview of such ordinance.   For aught that appears the businesses to be licensed were those that are lawful in their nature, whereas the business of selling intoxicating liquors, in which the petition-ers were engaged, is not per se lawful but becomes permissive in this State only where the county in which the liquors are being sold has, under the act of 1938, supra, voted in favor of taxing and controlling alcoholic beverages and liquors and the distribution

thereof, and the person conducting such a business has been granted a permit by the proper authorities. The licensing of such a business is in the exercise of a police power. The petition does not allege that the city was without delegated police powers; and, even if such allegation had been made, it would have to be ignored as against the general demurrer where, as here, the legislative charter granted by the act of 1929 (Ga. L. 1929, p. 862), of which we are bound to take judicial notice, shows to the contrary by section 39 of the act providing that "the mayor and council of the City of Austell shall have the police powers of regulation as authorized by the general laws of the State of Georgia to municipalities." *Griffin* v. *Augusta & Knoxville Railroad, 72 Ga.* 423 (2-d). "Inasmuch as a license to sell spirituous liquors is neither a contract nor a property right in the licensee but a mere permit to do what would otherwise be an offense against the general law, it is, when granted by a municipal corporation, subject at all times to the police powers of that corporation, and the latter, in the absence of any charter restriction upon its authority in this respect, may in the exercise of those powers revoke the license at any time." *Ison* v. *Griffin, 98 Ga.* 623 (25 S. E. 611). See also *Plumb* v. *Christie,* 103 *Ga.* 686 (30 S. E. 759); *Melton* v. *Moultrie,* 114 *Ga.* 462, 464 (40 S. E. 302); *Phillips* v. *Head,* 188 *Ga.* 511, 515 (4 S. E. 2d, 240); *Highnote* v. *Jones,* 198 *Ga.* 56 (2) (31 S. E. 2d, 13). The act of 1938, supra, affirmatively prescribes in section 19, embodied in section 58-1068 of the annotated supplement to the Code that, "Nothing in this act contained shall be construed as giving any person a right to sell spirituous liquors as herein defined, but the manufacture, sale and distribution of spirituous liquors is declared to be a privilege in this State and not a right." It is perfectly clear, therefore, that the act has in no wise enlarged the status of a licensee beyond that of a mere holder of a permit which is revocable at any time without cause, as declared in the decisions above cited. Of course, an exception may be noted in the case of a holder of a license to sell domestic wines, since by section 1 of the act of 1941 (Ga. L. 1941, p. 234; Code (Ann. Supp.) § 58-806), amending, among other things, section 4 of the act of 1935 (Ga. L. 1935, p. 492), such a license is not revocable except upon proper cause and a hearing.

Since the petitioners are engaged in a business which is only

permissive, and not the exercise of a legal right, and is subject to the will of the authorities granting the permit, and under the police powers of the municipality, in the absence of any charter restriction upon its authority in this respect, the license may be revoked at any time without cause, and since the ordinance relied upon does not show that the business of selling intoxicating liquors was embraced therein and that the revocation of a license therefor could not be revoked except for cause, the following allegations of the petition are mere conclusions of law: The ordinance makes specific provisions for the issuance of a license for conducting such a business as each of the petitioners is engaged in and provides the exclusive method for the revocation of such a license. The action of the defendants in purporting to revoke, in their official capacity, the licenses of the petitioners is null and void, ultra vires, and totally unauthorized by law. After the issue of such licenses to the petitioners, any revocation thereof by the city must be in accordance with the terms and provisions of the said ordinance. Being mere conclusions of law, all such allegations are insufficient to state a cause of action against general demurrer. *Harper* v. *Lindsey,* 162 *Ga.* 44 (132 S. E. 639); *Forrester* v. *Edwards,* 192 *Ga.* 529, 534 (15 S. E. 2d, 851); *Lee* v. *Atlanta,* 197 *Ga.* 518, 520 (29 S. E. 2d, 774). Disregarding these conclusions of law, the petition shows merely the revocation, under the police power of the municipality, of licenses to sell intoxicating liquors, which under the authorities above cited does not deprive the petitioners of any legal right or entitle them to the relief sought.

In a number of cases it has been held that the revocation of a license to sell spirituous liquors, when done under the police power of a municipality, does not deprive the licensee of his property without due process of law. *Sprayberry* v. *Atlanta,* 87 *Ga.* 120 (2) (13 S. E. 197); *Cassidy* v. *Macon,* 133 *Ga.* 689 (3) (66 S. E. 941). See also *McKown* v. *Atlanta,* 184 *Ga.* 221, 223 (3) (190 S. E. 571). Being the exercise of police powers, the revocation here was not, as contended by the plaintiffs in error, violative of article 1, section 4, paragraph 1 of the Constitution of this State (Code, § 2-401), which provides that: "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made

by an existing general law." *McKown* v. *Atlanta,* supra; *Mc-Gehee* v. *State,* 114 *Ga.* 833 (3) (40 S. E. 1004).

Since the revocation here was not an action to revoke for cause, the complaint as to the failure of the general council to exercise discretion shows no violated right of the petitioners for the assigned reason that the action was arbitrary, capricious, and an unlawful interference with their alleged lawful and licensed businesses. Nor can it be said that the revocation amounted to an unauthorized or arbitrary prohibition, in that at the same time the governing officials set a license fee of $20,000 for the remaining six months of the year 1945. It is provided by section 9 (d) of the act of 1938, supra (Code (Ann. Supp.), § 58-1032), that "nothing in this bill shall restrict the maximum amount to be charged or levied by counties or municipalities for licenses issued or granted to . . retailers as defined in this act. It is the purpose and intent of this paragraph to place no maximum limit or maximum amount that can be charged by municipalities or counties, and if any county or municipality now have a charter provision limiting the amount of license that can be charged upon any business, such limitation shall not apply to licenses issued or granted under this act."

What is said above also disposes adversely to the pleader of the complaint that the city, having no power except that expressly granted or incident to an express grant, could not lawfully revoke the licenses except in accordance with the quoted ordinance.

Respecting the complaint that the petitioners have investments in their businesses in excess of $25,000, and are without adequate remedy at law and will suffer irreparable loss and injury unless a court of equity intervene, it was held in *Melton* v. *Moultrie,* supra, that the fact that the holders of revoked liquor licenses had invested money in liquors or in fixtures which were needed in the conduct of the business would not vary the application of the rule that, in the exercise of its police power, a municipality might revoke liquor licenses at any time without refunding the money paid therefor or any part of the same. In the opinion it was said: "With their licenses lawfully revoked, the petitioners have the same standing as they would have if they had never obtained licenses, and have no legal right to sell intoxicating liquors in the City of Moultrie, and, therefore, are in no position to invoke the

aid of the courts to protect them from loss or damage by the enactment and enforcement of such ordinances. The lawful revocation of their licenses destroyed their right to sell such liquors in Moultrie; consequently they came into court asking for the protection of a right which no longer existed." Again, whether or not the assessment of a fee of $20,000 for a liquor license for the remaining six months in 1945 be unreasonable or confiscatory is no concern of persons who have no right to engage in selling liquor after the lawful revocation of their licenses. See *Hazleton* v. *Atlanta,* 147 *Ga.* 207 (4) (93 S. E. 202) ; *Mallet* v. *Harper,* 182 *Ga.* 506 (185 S. E. 798) ; *Griffin* v. *State,* 183 *Ga.* 775, 777 (190 S. E. 2) ; *Webb* v. *Atlanta,* 186 *Ga.* 430, 444 (198 S. E. 50) ; *Stegall* v. *Southwest Ga. Housing Authority,* 197 *Ga.* 571, 583 (30 S. E. 2d, 196).

The petition showing no right in the petitioners to the relief sought, the court did not err in sustaining the general demurrer and dismissing the action, and it is unnecessary to pass upon the sustained special demurrers.

It may be added that the contention of counsel for the plaintiffs in error that they were given no opportunity to amend, and for that reason the judgment should be reversed, is without merit. It is not urged that a request to amend was made and refused, and the record is silent in that respect. In *Olds Motor Works* v. *Olds Oakland Co.,* 140 *Ga.* 400 (1-a) (78 S. E. 902), it was held that "A trial judge may, in an order sustaining a demurrer, provide that the plaintiff have an opportunity to amend his petition so as to meet the grounds of demurrer." But this is not tantamount to holding that the trial judge is required to so provide in his order. We have here an instance where the court properly sustained a general demurrer, and it has been specifically held that in such a case the trial judge is not obliged to permit the plaintiff to amend. *Ripley* v. *Eady,* 106 *Ga.* 422 (2) (32 S. E. 343) ; *Lamar Taylor & Riley Co.* v. *Bank,* 127 *Ga.* 448, 452 (56 S. E. 486) ; *Wells* v. *Butler's Supply Co.,* 128 *Ga.* 37, 39 (57 S. E. 55). It is declared in the Code, § 81-1301, that "All parties, whether plaintiffs or defendants, in the superior or other courts, whether at law or in equity, may at any stage of the cause, as matter of right, amend their pleadings in all respects, whether in matter of form or of substance, provided there is enough in the pleadings

to amend by;" but, as pointed out in the *Wells* case, supra, it is not a "stage of the cause" after the cause has been ended by the signing of the judgment on the demurrer and no time has been allowed therein for amending.

*Judgment affirmed. All the Justices concur, except Head, J., disqualified.*