MAYOR &c. of SAVANNAH *v.* SAVANNAH DISTRIBUTING COMPANY INC.

560

No. 15843.  July 10, 1947.  Rehearing denied July 22, 1947.

*John C. Wylly* and *Fred B. Davis,* for plaintiff.

*Shelby Myrick* and *Anderson, Connerat, Dunn & Hunter,* for defendant.

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.)  1.  We do not have here a case involving a change in the policy of government in relation to the sale of liquor within a city, as was dealt with in *Melton* v. *Moultrie,* 114 *Ga.* 462 (40 S. E. 302), and *Owens* v. *Rutherford,* 200 *Ga.* 143 (36 S. E. 2d, 309). There could be no doubt of the legal right of the municipality to change its general policy, although that meant the cancellation of all licenses to sell liquor.  Therefore, we approach the instant case unhampered by the above rule on a change of policy and the decisions sustaining the same.  In *McKown* v. *Atlanta,* 184 *Ga.* 221 (190 S. E. 571), and *Lee* v. *State,* 184 *Ga.* 327 (191 S. E. 256), the statute under consideration was the 1935 malt beverage act (Ga. L. 1935, p. 73), and both of those decisions were rendered before the enactment of the law of 1938 to legalize and control alcoholic beverages (Ga. L. 1937-38, Ex. Sess., p. 103).  In the former case, it was said, with reference to the power of the City of Atlanta to grant or cancel a permit, that the city could grant or refuse such a permit and could thereafter "revoke the same without notice to the holder."  In the latter case, it was said that "The paper issued by municipal or county authorities is a mere permit revocable by them at their pleasure."  To both of the quoted expressions this court in *Phillips* v. *Head,* 188 *Ga.* 511 (4 S. E. 2d, 240), gave approval.  Neither of the decisions above cited involved an interpretation of the law here under consideration.  This act provides that the sale and manufacture of intoxicating liquor in any county may become legal only after a vote of the people affected thereby, and that if a majority of those voting vote in favor of taxing and controlling intoxicating liquors, "the manufacture, possession, distribution, and sale of such alcoholic beverages and liquors in such county shall be permitted in accordance with the provisions of this act" at the expiration of fifteen days.  Section 6 of the act provides that it shall be ad-

ministered by the State Revenue Commissioner, and section 8 enumerates the powers and duties of the State Revenue Commissioner, among which is the power, (c) "to revoke or cancel for cause after hearing any license issued by him under authority of this act." Section 9 (b) provides for a wholesaler's license and requires that it be renewed annually on or before the first day of January. It is provided in section 9 (c) that "Nothing in this act shall be construed as preventing any municipality or county from adopting all reasonable rules and regulations as may fall within the police powers of such municipalities or counties to regulate any business provided for in this act. All municipal and county authorities issuing licenses shall within their respective jurisdiction have authority to determine the location of any distillery, wholesale business, or retail business licensed by them." It is provided in section 9 (d) that the Revenue Commissioner shall not grant a license until the applicant exhibits a license granted by the municipality or county, and that "the local authority issuing this license shall have full authority to pass on the character, reliability, and other qualities of fitness before issuing such license." The writer, speaking for this court in *Highnote* v. *Jones,* 198 *Ga.* 56 (2) (31 S. E. 2d, 13), said: "The sale of intoxicating liquors, except as to domestic wines under a permit, is purely a privilege and not a right, and a license for such sale may be revoked by the governing authorities issuing the same without cause or opportunity for a hearing." The quoted language, if applied to beverages and liquor dealt with in the act of 1938 (Ga. L. 1937-38, Ex. Sess., p. 103), would be obiter, since the case there dealt with was considered to be one involving a permit to sell malt beverages under the 1935 act. It was certainly made without taking note of the plain provisions of the present act, expressly requiring notice and a hearing as a condition precedent to revocation by the State Revenue Commissioner. It can not correctly be said by any court that a State license under the act now being considered may be revoked without notice or cause by the authority issuing the same. This particular language in the act would render inapplicable to the present case any decision by this court rendered under a law that did not require a hearing before a revocation of the license.

The policy of the State in dealing with intoxicating liquors was fixed by the State law. Municipalities are bound by that law and can lawfully regulate the liquor business within their corporate limits to the extent that the law specifies. The statute authorizes municipalities to designate the locations of such places of business, provided they must not be within 100 yards of any church or within 200 yards of any school ground; and to fix license fees, provided the minimums shall not be less than the amounts stated in the law; and to consider and pass upon "the character, reliability, and other qualities of fitness *before issuing such licenses.*" (Italics ours.) They are also empowered to adopt "all reasonable rules and regulations as may fall within the police powers of such municipalities . . to regulate any business provided for in this act." As pointed out above, the State Revenue Commissioner is not allowed to issue licenses until the applicant has exhibited a license from the municipality or county.

The, obvious intent of the law is that the local licensing authorities shall have and exercise wide discretionary power in the approval of all applications for licenses, in order that the good character and reliability of such applicants in the community where they are best known may be found to exist before any license is issued. The State refuses to act until this important function of the local government has been performed and evidenced by the license issued to such applicant. The lawmakers were undoubtedly acquainted with the inherent evils attending the traffic in intoxicating liquors, and by the provisions of this act sought to afford protection to the public by insuring that until the applicants be thus found to possess good character and reliability they not be permitted to engage in the business. Surely all rules by whatever authority adopted for the regulation and control of the liquor business are intended to serve as instruments for the attainment of this high aim. It would be a rank injustice to those who qualify by meeting this rigid test to allow the authority that had, in the performance of a duty and power conferred by the law, found them to possess these requisites, accepted the required fee, and issued its license for one year, revocable only for cause, as provided by the ordinance, to immediately thereafter, without notice and without cause, arbitrarily revoke the license, thus depriving the licensee of his money, his business, and his lawful means of livelihood. Such

arbitrary action can not be sustained as an exercise of the police power. The law expressly limits the exercise of the police power to "reasonable rules and regulations" that may fall within this power. It is neither a "rule" nor a "regulation," nor is it reasonable and within the police power of the municipality of Savannah to revoke without cause the license here involved after it had shortly theretofore accepted the sum of $2000 from the licensee, which it had found possessed the quality of character and reliability requisite to a license. As will be pointed out hereinafter, even the exercise of the police power has its limit. It ends precisely where no reason for its exercise begins. It does not empower government needlessly and without cause, but simply for the purpose of inflicting injury upon an unoffending person, to revoke the license of such person issued by such government to carry on a lawful business. The State government did not retain for itself any such arbitrary power in the administration of this law. On the contrary, it expressly prevented the State Revenue Commissioner from revoking without a hearing and cause a license which the Commissioner had issued and for which the State received a fee. Whatever evils the manufacture and sale of intoxicating liquors may inflict upon the public, the arbitrary revocation of a license, for which the government issuing the same received a fee of $2000 from the applicant, is neither an effective nor a fair method of avoiding such evils. If, after notice and a hearing, the government desiring to cancel a license is unable to find the existence of a cause for such revocation, the licensee must evidently be worthy of continuing in business.

The City of Savannah adopted an ordinance in harmony with the State law, which provided for the issuance of a wholesale liquor license upon the payment of $2000, and that such license should issue for one year, unless sooner revoked because of a violation of the rules and regulations therein set forth. The ordinance also required that before such revocation the licensee should have notice and a hearing. The section providing for notice and a hearing was repealed by the city council at the same meeting at which the license here involved was revoked, and the licensee complains here of the action of the council in repealing that portion of the ordinance. Since the remaining portions of the ordinance provide that the license may be revoked for stated causes, it is unnecessary

for us to rule upon whether or not the action of the council in repealing the section providing for notice and a hearing was lawful. Under the ordinance as it stands, after the repeal of the section referred to, the license issued to the defendant in error was good for one year unless revoked for cause. In *Purvis* v. *Ocilla*, 149 *Ga.* 771 (102 S. E. 241), this court had under consideration a city ordinance which provided that for a violation of certain provisions of that ordinance the license issued thereunder would be ipso facto canceled, and it was there said: "Properly construed, such power authorizes the municipality to revoke the license only for cause." The present petition alleges that the licensee had violated no provision of the city ordinance and had violated no law, and that there existed no cause for cancellation, and that the license was canceled by the city arbitrarily and with the intention and purpose of discriminating against the petitioner, since other licenses were not canceled, and that it was done for the purpose of injuring the licensee. It would manifestly be unjust for the city government to obtain the licensee's money under its own ordinance, which provided that the license would be revoked only for cause, and immediately thereafter revoke such license without cause and retain for its own benefit the $2000 which it had received for such license. The injustice of such a transaction is not affected by the fact that it involved the sale of liquor. The standards of justice and fairness are not suspended when a government is dealing with its citizens in a legal manner concerning liquor any more than if the subject dealt with was of the highest and noblest nature. Whether or not liquor should be sold under any circumstances within this State, is no legitimate concern of the judiciary, but rests exclusively within the sound judgment of the legislature. That branch of the government has by this law made such sale under stated conditions lawful. By the action of the legislature both the courts of this State and the municipal governments of the State are inescapably bound.

But the City of Savannah contends that it had a right to thus arbitrarily revoke the license in the exercise of its police power. In 30 Am. Jur. 279, § 42, it is said: "The police power of the State, like other governmental authority, is to be used for the common welfare, impartially and without unjust discrimination; and while, as between the selling of liquor and other callings less

harmful to the public, the former may be discriminated against, there is no warrant for unjust discrimination as between individuals engaged in the same business, and this is true especially where the right to sell liquor is recognized by the Constitution." While the sale of liquor is not expressly recognized by the State Constitution, it is so recognized by the State law. Under the principle above stated, there was no warrant for discrimination as between the respective wholesale dealers. In 16 C. J. S. 562, § 195, it is said: "No exercise of the police power can override the demands of natural justice." At page 564 in the same volume, it is said: "The legislature may not exercise the police power for private purposes, nor for the exclusive benefit of particular individuals or classes." Again at page 582, it is said: "The police power, however, may not be resorted to as a cloak for the invasion of personal rights guaranteed by the various constitutions."

The petitioner invokes the equal-protection clause of the Constitution, article 1, section 1, paragraph 2, and contends that this constitutional guaranty was impinged by the discriminatory action of the city council in arbitrarily revoking the petitioner's license while at the same time permitting a number of other wholesale licensees, occupying precisely the same position, to continue in business under the city licenses. The equal-protection clause of the Constitution affords no protection to a mere privilege. *Schlesinger* v. *Atlanta,* 161 *Ga.* 148 (129 S. E. 861). The State law here involved expressly declares that the manufacture, sale, and distribution of spirituous liquors is a privilege and not a right. But, as pointed out above, the same act authorizes the collection of a fee for a license issued thereunder, and provides that the State Revenue Commissioner may not revoke a State license without cause shown upon a hearing. The license here involved was not, as contended by the licensee, a contract between the licensee and the City of Savannah. *Sprayberry* v. *Atlanta,* 87 *Ga.* 120 (13 S. E. 197); *Cassidy* v. *Macon,* 133 *Ga.* 689 (4) (66 S. E. 941); *Thacker* v. *Morris,* 196 *Ga.* 167, 171 (1) (26 S. E. 2d, 329). But was the license a mere privilege outside the protection of the constitutional provision invoked? Whether it was a privilege or a right, the licensee bought it from the City of Savannah and paid the sum of $2000 therefor. Although the city had the right to issue the license upon reasonable conditions, the licensee was entitled to

retain the license for the full period of time for which it was issued, provided it violated none of the terms and conditions upon which the same was issued. In such circumstances the licensee had something more than a "mere privilege," and was entitled to the equal protection guaranteed by the Constitution. We are confronted with a case where a public law of the City of Savannah lays down the terms and conditions upon which a wholesale liquor license will be issued and revoked. Pursuant to that public law, this licensee, along with a number of others, held a wholesale liquor license, and the city government singled out this petitioner and canceled its license without cause and in violation of the terms of that public law, while at the same time other licensees occupying precisely the same position as this petitioner were allowed to retain their licenses and continue in business. Clearly this petitioner was denied equal treatment with the others similarly situated. Unquestionably partiality as between such licensees was shown and practiced. Such is not the impartial and complete protection to person and property that the Constitution guarantees. The Constitution is offended where a public law is applied differently to different persons under the same or similar circumstances. *Baugh* v. *La Grange,* 161 *Ga.* 80 (130 S. E. 69). In Truax v. Corrigan, 257 U. S. 312, 332 (42 Sup. Ct. 124, 66 L. ed. 254, 27 A. L. R. 375), in construing the equal-protection clause of the United States Constitution, it was said: "The guaranty was aimed at undue favor and individual or class privilege, on the one hand, and at hostile discrimination or the oppression of inequality, on the other. It sought an equality of treatment of all persons, even though all enjoyed the protection of due process." Again, in Hartford Steam Boiler &c. Ins. Co. v. Harrison, 301 U. S. 459, 461 (57 Sup. Ct. 838, 81 L. ed. 1223), quoting from another United States Supreme Court case, and with reference to the equal-protection guaranty, it was said that "it may be said generally that the equal-protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, Kentucky Railroad Tax Cases, 115 U. S. 321, 337 (6 Sup. Ct. 57, 29 L. ed. 414) ; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 293 (18 Sup. Ct. 594, 42 L. ed. 1037), *and that it applies to the exercise of all the powers of the state which can affect the individual or his property.*" (Italics ours.) While it may be reasonably questioned as to

whether any government of the people ought in any instance to extend governmental privileges or favors to some of the citizens of a class, while denying such to others of the same class, the decisions of the courts require us to recognize that this may be done without offending the Constitution. We do not think, however, that the rule just referred to means that, having accepted money from the individual in consideration of the privilege which is granted upon express terms, the government can constitutionally, shortly thereafter and without cause, arbitrarily revoke the privilege of one, while refusing to revoke the privileges of others occupying precisely the same position. Accordingly, we hold that the action of the city here complained of was an impingement of the licensee's protection guaranteed by the Constitution, and that the court did not err in overruling the general demurrer and in granting an interlocutory injunction against the city authorities as prayed.

*Judgment affirmed. All the Justices concur, except Jenkins, C. J., Bell, and Atkinson, JJ., who dissent.*

JENKINS, Chief Justice, BELL, and ATKINSON, Justices, dissenting. The act of the General Assembly (Ga. L. 1937-38, Ex. Sess., p. 103) legalizing and controlling the sale of alcoholic beverages and liquor expressly provides by section 19 thereof as follows: "Nothing in this act contained shall be construed as giving any persons a right to sell spirituous liquors as herein defined,. but the manufacture, sale, and distribution of spirituous liquors is declared to be a privilege in this State and not a right." This principle has been the established and expressed policy of this State for more than half a century. It has been stated and reiterated by this court many times. One of the plainest and most incisive statements of this principle may be found in *Ison* v. *Griffin,* 98 *Ga.* 623, 625 (25 S. E. 611), where the court speaking through Justice Lumpkin used this language: "When he accepted his license from the corporate authorities of Griffin, Ison was chargeable with knowledge that it was revocable at any time, irrespective of the question whether or not he did any overt or unlawful act which would of itself afford cause for revocation. This being so, he took it subject to the city's right to revoke it at pleasure; and therefore, when it was revoked, no legal wrong was done him. He had no contractual right as against the city, and therefore it cannot

be in any sense liable to him as for a breach of contract." To the same effect see *Sprayberry* v. *Atlanta,* 87 *Ga.* 120 (2) (13 S. E. 197); *Plumb* v. *Christie,* 103 *Ga.* 686 (30 S. E. 759, 42 L. R. A. 181). To declare now that the permit granted to a dealer in alcoholic beverages can not be revoked at pleasure and without cause being shown or a hearing had, with the necessary incidental right to certiorari to the courts, would result in completely over-ruling the policy of the law which has long been recognized and stated in unquestioned terms. Whether or not the ordinance which was in force in the City of Savannah at the time the permit in the instant case was granted, and which provides for a hearing before a license could be withdrawn, could have operated, even if such provision had not been repealed prior to the withdrawal of the license, to limit a free exercise of the city's power and authority as declared by the statute and by the decisions of this court, is immaterial, since the plaintiff licensee took its license with full knowledge that the city had the power to amend or repeal such ordinance at any time, and it is therefore in no better position than if the original ordinance had never contained the provision for hearing. Code, § 69-202. That the Department of Revenue looks primarily to the municipality to safeguard the good order and peace of the local communities, is indicated by the fact that it is not permissible for it to grant permits at all until the local authorities have first themselves exercised their authority, and the restrictions upon the State Revenue Department not to withdraw its own license without first having a hearing have no relation whatever upon the operation of the police powers of a local munici-pality. Nor does the fact, that the State law provides that "Nothing in this chapter shall be construed as preventing any municipality or county from adopting all reasonable rules and regulations as may fall within the police powers of such municipali-ties or counties to regulate any business provided for in this chap-ter," operate to authorize the adoption of any rule which would contravene the established State law as long interpreted by this court. Moreover, it should be seen at once that this provision of the law pertains primarily to the *regulation* of businesses and has no connection with and bears not at all upon the right of revoca-tion. Under this statute, despite the fact that the State taxing authority had issued its license, the police authorities had the right

to regulate the business, such as for example to regulate what hours the business could remain open and other questions relating to the peace and good order of the community.

(*a*) This court has held at least twice that the equal-protection clauses of the State and Federal Constitutions protect rights alone, and have no reference to mere concessions or privileges, which may be bestowed or withheld by the State or municipality at will. *Schlesinger* v. *Atlanta,* 161 *Ga.* 148 (2 b) (129 S. E. 861); *McKown* v. *Atlanta,* 184 *Ga.* 221, 222 (3, 4) (190 S. E. 571).

(*b*) Since the city authorities had the legal right and power to revoke the license of the plaintiff, as they did, the plaintiff could not invalidate such revocation as to it by showing that the licenses of other dealers in similar situation were not also revoked.

The foregoing deals with the more important contentions of the plaintiff. We have also examined its remaining contentions and consider them without merit.