McCALEB, Justice
 

 (dissenting).
 

 I regret my inability to subscribe to the majority opinion as I am in accord with the view that the price-fixing provisions of Act 360 of 1948 have no real and substantial relation to the declared object of preventing “injury to the economic, social and moral well-being of the people of the State” — it being my opinion that regulations of this sort are economically unsound and tend to foster monopolistic practices. And, if the court were dealing with similar measures placed upon the ordinary commodities of life such as corn, wheat, cotton, potatoes, etc., I would not hesitate to vote for invalidity'of the statute as denying due process of law guaranteed by Section 2, Article I of our Constitution — -for, in such case, it could be rightfully concluded that, in the attempted regulation of an inherently lawful business, police power is circumscribed and restricted to cases in which there is an obvious and real connection between fhe regulation and the purpose sought to be attained.
 

 But, here, we are dealing with price restrictions upon the sale and distribution of intoxicating liquor, a noxious commodity, over which, all authorities agree, the legislature has plenary power of suppression and regulation. See 30 American Jurisprudence, Verbo “Intoxicating Liquors” Sections 28-30; City of New Orleans v. Smythe, 116 La. 685, 41 So. 33, 6 L.R.A., N.S., 722, 114 Am.St.Rep. 566, and Samuels v. McCurdy, 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568, 37 L.R.A. 1378. The only limitation, of which I am advised, upon the broad police power of the State over intoxicating liquors is that the Legislature may not exercise the power in such a way as to infringe upon any of the inalienable rights secured to citizens under the Bill of Rights of our State Constitution (see Article I, Sections 1 through 15) and the Fourteenth Amendment to the Constitution of the United States.
 

 Accordingly, the holding of the majority, that the price-fixing provisions of Act 360 of 1948 are unconstitutional because they deny due process of law to appellee, can only be justified by a finding that the firm, as a retail merchant, has a property right to freely dispense intoxicating liquors of which it is being deprived by the legislation under attack. But the majority opinion concedes, as it must, that “there is no inherent right in a citizen to sell intoxicating liquor * * * and that liquor licenses are neither contracts nor rights of property.” Since, therefore, appellee’s engagement in the liquor business is a mere privilege, revocable at the will of the Legislature, can it logically be concluded that the price-fixing provisions of the statute, under which appellee has obtained its license, have deprived it of its property without due process of law?
 

 
 *187
 
 The answer is that the price markups contained in the statute, however arbitrary, do not take from appellee any personal or property right, secured to it by the Constitution, that it would otherwise have had but for the Legislature. It seems clear to me that, since the Legislature has the power to prohibit the traffic in intoxicants, it is well within its rights in adopting lesser measures, even though those measures would be stricken down as arbitrary and unreasonable if the police power was being exerted in the regulation of inherently lawful pursuits.
 
 [1]
 

 Of course, as I have above stated, the Legislature cannot exert its vast police power over intoxicants so as to violate other constitutional provisions and officers charged with the enforcement of such statutes may not employ the authority vested in them in such a way as to deny fundamental constitutional guarantees. So it was held, in State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 67 L.R.A. 70, 2 Ann.Cas. 92 (relied on by the majority), that the City of New Orleans, having passed an ordinance licensing vendors of liquors under certain conditions could not arbitrarily refuse to grant a license to relator who had complied with all of the conditions prescribed. But the Court did not declare the ordinance unconstitutional— it merely decided that the unlawful action of the authorities rendered the City amenable to a mandamus proceeding because to deny the relator the right to earn his livelihood by means of a lawful calling deprived him of the equal protection of the law and of his liberty without due process of law.
 
 [2]
 

 To the same effect is the decision of the Supreme Court of Georgia in Mayor, etc., of Savannah v. Savannah Distributing Co., 1947, 202 Ga. 559, 43 S.E.2d 704 (strongly relied upon by counsel for appellee but which does not support their contention), where it was ruled that the City of Savannah was without right to arbitrarily revoke the license of a wholesale liquor dealer who had complied with all of the requirements
 
 *189
 
 of a local option ordinance and had obtained a permit to do business thereunder. But, like State ex rel. Galle v. City of New Orleans, the Court did not strike the ordinance with invalidity; the holding was that the city government acted unlawfully and in violation of the dealer’s constitutional rights (equal protection clause) in cancelling its license without cause.
 

 There are many other adjudications which have been brought to our attention by both sides. But I do not find that any of them is wholly applicable to the case. It is true that there are expressions in some of the authorities which afford comfort to each of the litigants but none of them is determinative of the constitutionality of the price-fixing provisions before us.
 

 There are other attacks upon the statute which are listed in the main opinion but not discussed because of the result
 
 reached
 
 by the Court. I do not think that any of these challenges is well founded. In fact, there is only one which warrants notice— forasmuch, as the district judge held the statute unconstitutional on that ground— that is, that the price-fixing measure is an unlawful delegation of legislative power because it allegedly vests in the manufacturers of alcoholic beverages the right to fix the minimum prices. I see no merit in this contention simply because the statute does not delegate any such power to the manufacturer. The price, as I see it, is fixed by the Legislature itself for the statute declares, in effect, the minimum price to be the cost of the alcoholic beverage to the wholesale dealer plus a definite markup by the wholesaler and another markup by the retailer.
 

 I respectfully dissent.
 

 [1]
 

 . See 30 American Jurisprudence, Section 45, citing Paul v. Washington, 134 N. C. 363, 47 S.E. 793, 65 L.R.A. 902 and Reeves v. Simons, 1942, 289 Ky. 793, 160 S.W.2d 149; See also Ziffrin, Inc., v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 167, 84 L.Ed. 128, where the Supreme Court of the United States, in speaking of the police power of the State over intoxi- • cants, remarks: . “Having power absolutely to prohibit manufacture, sale, transportation, or possession of intoxicants, was it permissible for Kentucky to permit these things only under definitely prescribed conditions. Former opinions here make an affirmative answer imperative. The greater power includes the less.”
 

 [2]
 

 . Article
 
 181
 
 of the Constitution of 1898 recognized the validity of the sale of alcoholic liquors and declared that “the General Assembly may enact laws regulating their sale and use.” No provision of this ■ sort is found in the Constitution of 1921.