**ULTRA SUCRO COMPANY, Plaintiff,**

v.

**ILLINOIS WATER TREATMENT COMPANY, Defendant.**

United States District Court
S. D. New York.
Nov. 16, 1956.

Leonard Feldman, New York City, for plaintiff.

Cahill, Gordon, Reindel & Ohl, New York City, for defendant, appearing specially, Robert G. Zeller, New York City, Ralph Menapace, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

By this motion defendant seeks an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, 28 U.S. C. vacating the service of summons and complaint and dismissing this action for want of jurisdiction over the defendant, or in the alternative seeks an order pursuant to Title 28 U.S.C. § 1404(a) transferring the action to the United States District Court for the Northern District of Illinois.

The underlying action is based on plaintiff's allegations that the defendant corporation wrongfully appropriated, used and disclosed plaintiff's trade secrets which had been confided to the defendant in a confidential relationship.

Plaintiff initiated this action in the Supreme Court of the State of New York by the service of a summons and complaint upon a Mr. Thompson, supervisor of defendant's New York City office, on October 5, 1956. On October 10, 1956, defendant, appearing specially, moved in the state court for an order vacating the service of process and complaint on the ground that the defendant was not subject to service of process in the State of New York. On October 18, 1956, before a determination of this question was made in the state court, defendant removed the action to this court because of diversity of citizenship. It now renews its motion to vacate the service of the summons and complaint. Rule 12(b), Federal Rules of Civil Procedure.

Although defendant is an Illinois corporation, it has maintained a sales office in New York under its corporate name for approximately ten years and has been at its present address for the last five years, pursuant to a lease signed by the defendant. The defendant is the sole occupant of the suite of offices and its name appears on the door. The New York Telephone directories list the defendant. All orders which are solicited by this office must be approved by the Illinois office. Shipment is made directly to the purchaser. Defendant has not been required to file a Certificate of Doing Business within the State of New York, or to pay the general business tax in the City of New York or the franchise tax within the State of New York.

The office is presided over by Mr. Joseph Thompson, whose duties, as described by the affidavit of the president of defendant corporation, consist of " * * * supervision of the office and coordination of the sales efforts of himself and the other sales representatives of defendant in the East with the sales policies estab-

lished by the home office in Rockford, Illinois." The duties of the other two men in the office according to the president's affidavit, are to promote sales, assist in the completion of special requirement jobs and supervise the installation of equipment.

Defendant has represented its New York City office as the general office for all company business on the Eastern Seaboard. Mr. Thompson is the highest representative of the defendant in that region. The office also serves as the resident office for defendant's principal officers when they are in New York, and it is the place where many important decisions are negotiated, including the original negotiations leading to the agreement out of which the present lawsuit arose.

■ To determine whether jurisdiction was obtained over the defendant corporation, it is necessary to decide whether it was doing business in New York. If this action had been brought in the federal district court originally, there would be a close question as to whether the state or the federal test for "doing business" should apply.[1] Since this case was removed from a state court, however, federal jurisdiction is derivative, and the federal judge must pass on objections to the jurisdiction of the state court.[2] Thus, in the first instance, it is necessary to determine whether service was valid under New York law. Since it is impossible to formulate any one concise standard for "doing business", it is necessary to look at the state decisions and to compare

them with the facts involved in the instant case.

■ Some of these decisions[3] have gone so far as to equate the New York rule with the constitutionally permissible standard of reasonableness enunciated in the International Shoe case.[4] Even if this view does not represent the "true" law of New York, and I do not believe that it does, it nevertheless indicates the liberality with which many of the New York courts approach the question. In any case, it is clear that they will take jurisdiction over a foreign corporation when, "* * * it is here, not occasionally or casually, but with a fair measure of permanence and continuity * * *". This standard was established by the Court of Appeals in an opinion written by Judge Cardozo in the leading case of Tauza v. Susquehanna Coal Co., 1917, 220 N.Y. 259, 267, 115 N.E. 915, 917. It was held there that where a foreign corporation has a sales office in New York, where sales agents systematically and regularly solicit orders which result in continuous shipments from out-of-state into New York, the corporation is subject to service in New York.

In Tauza as in the instant case, sales orders were not binding until they were confirmed by the home office, payment was to be made directly to the home office rather than to the sales agents, no one had been authorized to accept service and the corporation did not come within the General Corporation Law standard of doing business for purposes of filing a certificate. Nevertheless, Judge

---

1. The courts are divided on this question. "The fifth, third, seventh and probably the first [circuits] appear to be committed to a state test while the second and sixth circuits appear to be committed to a federal test. The law in the other circuits is unclear. It should be noted that more of these doing business cases (about 20% of the total) arise in the southern district of New York than in any other district." Doing Business as a Test of Venue and Jurisdiction Over Foreign Corporations in the Federal Courts, 56 Columbia Law Review 394, 398 n. 27 (1956).

2. Chipman Ltd., v. Thomas B. Jeffery Co., 1920, 251 U.S. 373, 40 S.Ct. 172, 64 L.Ed. 314; Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33; Rosenthal v. Frankfort Distillers Corp., 5 Cir., 1951, 193 F.2d 137.

3. See Blond v. Bernard Land & Sons, Inc., Sup., Special Term 1955, 145 N.Y. S.2d 234; cf. Lillibridge, Inc. v. Johnson Bronze Co., 220 App.Div. 573, 222 N.Y.S. 130, affirmed without opinion, 247 N.Y. 548, 161 N.E. 177.

4. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

Cardozo's opinion held the foreign corporation amenable to suit in the state. This decision has been consistently followed and even expanded by subsequent New York cases.[5]

■ The defendant seeks to distinguish these cases from the instant one by claiming that the volume of sales by the New York City office did not result in "continuous" shipments into New York and represented only a fraction of defendant's total volume. This argument misses the point entirely. The question is not how successful a corporation is in doing business, but rather, whether it is making a regular and continuous effort to carry on such business in the state. The New York City office of the defendant certainly represents much more than a casual or occasional endeavor and in many respects it is an even stronger case than Tauza.

■ As to the question of whether service on Thompson was valid under section 229(3) of the New York Civil Practice Act, " * * * we understand the New York courts to hold that, whatever activities make the corporation 'present,' the agent in charge of those activities is the 'managing agent' pro hac vice". Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33, 37.

■ Since service was proper and the defendant was doing business under New York's test, and since that test is surely within the constitutional limits of International Shoe, this Court has jurisdiction over the defendant. Defendant's motion for dismissal is denied.

■ We come now to defendant's alternative motion seeking an order transferring the action to the federal district court for the Northern District of Illinois. The Judicial Code provides that "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although the reviser's note on section 1404(a) states that it was drafted in accordance with the doctrine of forum non conveniens, the Supreme Court has established that it is more than a mere codification of that doctrine.[6] District courts now have the discretion to grant transfers upon a lesser showing of inconvenience by a defendant than would be required for dismissal under forum non conveniens. While the relevance of state case law under Erie R. Co. v. Tompkins [7] to the decision of a transfer motion in a diversity of citizenship case was an open question until recently,[8] it now seems to be settled, in the Second Circuit at any rate, that the state rule of forum non conveniens does not control the federal court.[9] The criteria used to determine whether transfer

5. Bomze v. Nardis Sportswear, Inc., 2 Cir., 1948, 165 F.2d 33 (applying New York law); Thames v. Lund, Sup., 34 N.Y.S.2d 388, affirmed 3d Dept. 1940, 263 App.Div. 1041, 34 N.Y.S.2d 416; Schumann v. National Pressure Cooker Co., 4th Dept. 1939, 256 App.Div. 1044, 10 N. Y.S.2d 743.

6. Norwood v. Kirkpatrick, 1955, 349 U.S. 29, at page 32, 75 S.Ct. 544, at page 546, 99 L.Ed. 789. "The harshest result of the application of the old doctrine of forum non conveniens, dismissal of the action, was eliminated by the provision in § 1404 (a) for transfer. When the harshest part of the doctrine is excised by statute, it can hardly be called mere codification. As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." id. at 32.

7. 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188.

8. See Curie, Change of Venue and the Conflict of Laws, 22 U.Chi.L.Rev. 405 (1955); Kaufman, Observations on Transfers under Section 1404(a) of the New Judicial Code, 1951, 10 F.R.D. 595, 598–601.

9. See Willis v. Weil Pump Co., 2 Cir., 1955, 222 F.2d 261; Kaufman, Further Observations on Transfers Under Section 1404(a), 56 Colum.L.Rev. 1, 12 (1956).

should be granted, however, are still basically those applied in forum non conveniens cases. The Norwood v. Kirkpatrick case did not alter the basic considerations set forth in Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 506–507, 67 S.Ct. 839, 843, 91 L.Ed. 1055:

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."

Before applying these considerations to the instant case, it would be well to set forth the basic contentions of the parties in the underlying action. Plaintiff alleges the following:

(1) That it is in possession of a revolutionary new trade secret which will substantially reduce the costs of refining sugar;

(2) That after many negotiations in New York City as well as in the State of Illinois, the plaintiff imparted to the defendant corporation in confidence, its hitherto undisclosed process;

(3) That this disclosure was made on the basis of an agreement under which the defendant undertook to keep such disclosures confidential;

(4) That defendant has pirated the process, claims it as its own development, and is disclosing it to unauthorized persons in violation of the confidential relationship.

Defendant contends that the plaintiff has not developed a new process; that if it has it was not disclosed to the defendant; and that the processes and equipment which defendant has been using, manufacturing and selling was developed by it in collaboration with the Dow Chemical Company and Lever Brothers before it was ever approached by the plaintiff.

The background of the present litigation appears to be this: Plaintiff, a New York partnership, was experimenting with a new method for increasing the yield of raw sugar from cane and beets. During the course of certain field tests in Puerto Rico in 1955, plaintiff had used some of defendant's equipment. Although the equipment was found efficient, the cost of its operation was prohibitive. In December 1955 one of the partners of plaintiff met with Mr. Thompson, Eastern Manager of the defendant, in the latter's New York City office to discuss the applicability to the plaintiff's process of some new equipment developed by defendant. On January 10, 1956, a meeting was arranged at defendant's New York office between plaintiff's partner and his attorney and defendant's president and Mr. Thompson. As a result of that meeting, plaintiff contends, it was concluded that plaintiff would test defendant's new equipment at the Illinois plant in Rockford, Illinois; that in order to do so plaintiff would have to reveal many of its secrets and confidential data; and, that defendant would keep all such secrets and data confidential and make no disclosure thereof without plaintiff's consent. Plaintiff further asserts that after experimentation and demonstration had been successfully concluded, it became aware, in August, 1956, that defendant was claiming plaintiff's process as its own, and was advertising this fact to the sugar industry at large.

Coming now to the specific considerations, one factor which is given some weight in deciding whether to transfer, is the question of whether the transactions involved in the action are connected to the state in which the judicial district chosen by the plaintiff is located. Defendant urges that since most of the alleged disclosures to the defendant took place in Illinois, and since the alleged misuse of this information is taking place there, that state has the primary contacts with the case. Plaintiff, however, urges the following factors:

(a) The negotiations leading to the agreement to build a joint demonstration plant in Illinois were made in New York;

(b) The agreement to keep plaintiff's data and information confidential was made in New York by defendant's president;

(c) The initial disclosure of confidential information by plaintiff to defendant took place in New York;

(d) The initial demand that defendant desist from a misuse of plaintiff's confidential disclosure, was made at a conference in New York at which defendant's principal vice-president was present.

In light of these facts, it is clear that transfer cannot be granted on the basis of primary contacts with the case.

A second factor to be considered is the convenience of the parties. Most of defendant's officers with knowledge of this action, except for Mr. Thompson, will have to come to New York from Illinois. Were transfer granted, however, all of plaintiff's principals will have to go from New York to Illinois. Since defendant has an office in New York and is doing business here, if there is any balance of inconvenience here it is with the plaintiff.

█ A third important consideration is the convenience of third party witnesses. Since parties tend to outdo each other in the sum total of possible witnesses they can locate in or near the district in which each would like to try the case, the judge must endeavor to determine who the key witnesses are rather than merely count up the possible witnesses for each side.[10] Defendant indicates that it has eight witnesses whom it believes essential to the present action. Two are in Indiana, two in Michigan, two in Utah and one each in Iowa and California. Four of these witesses are with the Dow Chemical Company and Lever Brothers. They are to testify as to their work in conjunction with defendant's development of a pilot plant in Hammond, Indiana, where defendant's new equipment in the refining of *glycerine* was used. Since

plaintiff concedes that the defendant developed new equipment for refining glycerine, these witnesses appear to be of dubious importance. There is only one witness who seems to have had contact with the pilot plant in Rockford, Illinois, which dealt with plaintiff's process for the production of sugar. Even if it is conceded that all of these witnesses are essential, however, their inconvenience will not outbalance plaintiff's, if the action is transferred to Illinois. Plaintiff has witnesses in New York within the Southern District, with whom the defendant allegedly attempted to do business by representing that the plaintiff's process was its own; persons who will establish the alleged uniqueness of plaintiff's process, and who were privy to the negotiations had between the plaintiff and the defendant. In addition, plaintiff has witnesses from Puerto Rico who worked on the field test of plaintiff's process.

A fourth consideration is the necessity for a view of the premises. Defendant claims that a view of the Rockford, Illinois pilot plant will be essential because "plaintiff claims it utilizes the alleged Ultra-Sucro process and defendant claims it does not." (Defendant's Memorandum, page 18). It is not true, however, that plaintiff claims the *plant* is now using their process. On the contrary, plaintiff contends that the plant has been dismantled and that the critical equipment which it contained is now in its possession. It further contends that its process can easily be demonstrated in the courtroom on a small table and that no view of any kind will be necessary.

█ Although Norwood v. Kirkpatrick held that a lesser balance of inconvenience will sustain a transfer, it is still essential for the moving party to demonstrate that there is a preponderance of inconvenience on its side. This is especially true where the plaintiff's choice of forum is that of the place where he resides and is domiciled.[11] On the

---

10. See Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329, 331.

11. See Lewis v. American Airlines, D.C.

S.D.N.Y.1950, 91 F.Supp. 31, 33. Section 1404(a) was incorporated into the Judicial Code for the primary purpose of curbing "forum shopping" abuses, es-

basis of the factors discussed above, I conclude that the defendant has not sustained this burden. The requested transfer would merely shift all of the inconvenience from the defendant to the plaintiff and would deprive the plaintiff of its chosen forum.

Motion denied. So ordered.

pecially those which had been prevalent under the FELA. See Reviser's Note, 28 U.S.C. § 1404(a) (1952); Moore, Commentary on the United States Judicial Code 202 (1949); Gibson, The Venue Clause and Transportation of Lawsuits, 18 Law & Contemp.Prob. 367, 381–99 (1953). For this reason courts have been extremely reluctant to transfer actions brought by plaintiffs in their home forums, where there is no question of "forum shopping". Where the interests of justice clearly call for a transfer from the forum in which the plaintiff resides, however, such a transfer should be granted. Nicol v. Koscinski, 6 Cir., 1951, 188 F.2d 537. In Norwood v. Kirkpatrick, supra, although one of the plaintiffs resided in the original forum, the case was transferred to the district where the causes of action arose.