REDWINE, State Revenue Commissioner, *v.* UNITED STATES TOBACCO COMPANY.

No. 18162. ARGUED MARCH 10, 1953—DECIDED APRIL 14, 1953.

*Eugene Cook, Attorney-General, M. H. Blackshear Jr., George*

*E. Sims Jr.,* and *F. H. Boney, Assistant Attorneys-General,* for plaintiff in error.

WYATT, Justice. The question here presented is whether or not the activities of the defendant in error as disclosed by the petition amount to "doing business" in Georgia in the sense of the language used in the Georgia Income Tax Act (Ga. L., Ex. Sess., 1931, p. 24). In so far as the activities of the defendant in error as disclosed by the foregoing statement of facts are concerned, this case is clearly controlled by the rulings in *Suttles* v. *Owens-Illinois Glass Co.,* 206 *Ga.* 849 (59 S. E. 2d, 392), and *Redwine* v. *Dan River Mills,* 207 *Ga.* 381 (61 S. E. 2d, 771). In both of those cases, the question for decision was whether or not the activities of the taxpayer amounted to "doing business" as that term is used in the Georgia Income Tax Act, supra. True it is that the *Owens-Illinois Glass. Co.* case, supra, was an intangibles-tax case. Nevertheless, the language there to be construed was in principle the same. In that case appears a collection of authorities on this question that need not be cited again here.

The question here under consideration, in reverse order, was decided by the Court of Appeals in *Montag Brothers* v. *State Revenue Commission,* 50 *Ga. App.* 660 (179 S. E. 563), and that ruling was affirmed by this court on certiorari in *Montag Brothers* v. *State Revenue Commission,* 182 *Ga.* 568 (186 S. E. 558).

It follows, under the facts above stated, the taxpayer in this case was clearly not subject to pay the income tax sought to be recovered.

It is insisted that the following allegations in the instant petition differentiate this case from the authorities above cited: "In connection with their promotional activities, plaintiff's sales representatives occasionally purchased with funds advanced by plaintiff as hereinafter described, a small quantity of plaintiff's product from jobbers handling said product in Georgia and carried it with them in their automobiles. In the event of a tobacco retailer being completely out of the plaintiff's product when a sales representative of the plaintiff called on the re-

tailer, the sales representative would sell the retailer a small quantity out of such stock in his automobile, at the same price which he paid for the said product to the jobber. Such car sales thus were not made for profit and they resulted in no profit to the sales representative or to the plaintiff, but were a part of the promotional activities to assist in the securing of orders for interstate shipments of plaintiff's products as set out in this paragraph. Plaintiff advanced to its sales representatives funds for the purchase of plaintiff's products from jobbers for sales promotional work as aforesaid, the sales representative agreeing to use the funds only for that purpose and to repay to the plaintiff the amount advanced, less the cost of the products turned over by him to the plaintiff, upon leaving the plaintiff's employment or upon request by the plaintiff."

It was further alleged: "In the event of a tobacco retailer having on hand products manufactured by the plaintiff which had become stale, plaintiff's sales representative would accept such stale products in exchange for fresh products out of the stock in his automobile, usually of the same quantity as the stale products accepted but sometimes of a lesser quantity according to policy determined from time to time by plaintiff at its office in New York. In rare instances where the retail dealer wished to discontinue stocking the type of product which had become stale or plaintiff's sales representative did not have any of that type of product in the stock in his car, plaintiff's sales representative would pay the retailer in cash for the stale products accepted from the retailer, in an amount usually equal to but sometimes less than the cost to the retailer of the stale products, according to policy determined from time to time by plaintiff at its office in New York. In some occasional instances, plaintiff's sales representatives made exchanges with wholesalers and jobbers of fresh products from the stock in the sales representatives' automobiles for small quantities of stale products of plaintiff's manufacture which the wholesalers or jobbers had on hand, but offers by wholesalers and jobbers in Georgia to exchange stale products of plaintiff's manufacture in sizeable quantities for fresh products or credit were sent to plaintiff's home office in New York where such offers were subject to being accepted or rejected, the stale products were shipped by the

wholesaler or jobber by common carrier direct to plaintiff's factory outside Georgia, and the fresh products were shipped by common carrier from the plaintiff's factories outside the State of Georgia direct to the wholesaler or jobber within the State of Georgia who made the offer. Stale products accepted from dealers by plaintiff's sales representatives in Georgia were destroyed by the sales representatives or returned by him to plaintiff's factory, and plaintiff reimbursed its sales representatives through their expense accounts for the cost to them of fresh products from the stock in their automobiles exchanged by them, and for the cash paid by them, for stale products accepted by them from dealers. All exchanges by plaintiff's sales representatives of fresh products from the stock in their automobiles for stale products were treated by plaintiff in keeping its records as car sales. The aforesaid transactions involving stale products engaged in by plaintiff's sales representatives were not entered into for profit and resulted in no profit to the sales representative or to the plaintiff but were a part of the promotional activities to assist in the securing of orders for interstate shipments of plaintiff's products as set out in this paragraph."

The precise question presented by these allegations, so far as we have been able to ascertain, has never been dealt with by the courts of this State. We are, therefore, called upon for the first time to apply the term "doing business" as used in the Georgia Income Tax Act, supra, to a state of facts as disclosed by the language from the petition, above quoted. In doing so, we start with the well-established rule of law to the effect that revenue statutes are to be construed strictly so as to resolve doubt in favor of the taxpayer.

In Vol. 13 Words and Phrases, p. 126, under "doing business," will be found a collection of authorities dealing with what activities will constitute "doing business." It seems to be rather well established by all the authorities that "doing business" in order to incur tax liability under statutes imposing taxes on persons "doing business" in a State means that a foreign corporation must transact some substantial part of its ordinary business, and that it must be continuous in character as distinguished from a mere casual or occasional transaction; that a single or several transactions is not necessarily conclusive on the question

of whether the corporation is "doing business." Some courts have held that the occasional sale of samples previously sent into a State, was not, alone, sufficient to amount to "doing business." The term "doing business" has been held to mean more than the term "transacting business." It has been held that the fact that, on an occasional failure of a party ordering goods to take them, the broker through whom they were ordered was requested by the corporation to sell them on its account did not amount to "doing business." These rulings are all by courts of other States and will be found in Words and Phrases, supra.

Whether a person makes money or not, of course, does not determine his liability for taxes under the statute here considered. But whether or not the activities under consideration are engaged in for the purpose of making a profit is important. The isolated instances alleged in the petition above quoted were not for the purpose of making a profit, and none was ever realized or intended to be realized.

We conclude, the activities here under consideration were promotional in character, and did not amount to "doing business" so as to create a liability to pay income taxes to the State of Georgia under the terms of the Georgia Income Tax Act, supra. The parties in the *Owens-Illinois Glass Co.* and *Dan River Mills* cases, supra, under the facts there appearing, were to all intents and purposes engaged in transacting business in Georgia in the same manner as the taxpayer here under consideration. To hold that they were not liable for tax and that this taxpayer is, would be manifestly unfair and unjust. We conclude that it was not error to overrule the general demurrer to the petition.

We construe the judgment under review not to have dealt with the ratio question.

Under the above rulings, the constitutional questions will not be decided.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., not participating.*