18572. REDWINE, State Revenue Commissioner, *v.* SCHENLEY INDUSTRIES, INC.

Argued May 11, 1954—Decided June 14, 1954—
Rehearing denied July 14, 1954.

*Eugene Cook*, Attorney-General, *George E. Sims, Jr., F. Douglas King, Robert H. Hall*, Assistant Attorneys-General, *John W. Wilcox, Jr.*, for plaintiff in error.

*Arnall, Golden & Gregory, C. E. Gregory, Jr.*, contra.

DUCKWORTH, Chief Justice. 1. With the exception that the commodities are different, the business transactions of this non-resident were in all material respects precisely the same as those in *Suttles* v. *Owens-Illinois Glass Co.*, 206 *Ga.* 849 (59 S. E. 2d 392); *Redwine* v. *Dan River Mills*, 207 *Ga.* 381 (61 S. E. 2d 771); and *Redwine* v. *U. S. Tobacco Co.*, 209 *Ga.* 725 (75 S. E. 2d 556). In each of those cases it was held that there was no "doing business" in this State and, hence, Georgia could not tax choses in action or income arising from such business. This case is controlled by those decisions unless the contention of the State that the commodity here being whisky entitles the State to tax the income arising from the privilege but not a right, which is not protected by the commerce clause of the Constitution. We reject this contention. That selling whisky in conformity with the law is more than a mere privilege and is protected by the Constitution was held in *Mayor &c. of Savannah* v. *Savannah Distributing Co.*, 202 *Ga.* 559 (43 S. E. 2d 704). While that decision does not have the concurrence of all the Justices it is supported by *Schlesinger* v. *City of Atlanta*, 161 *Ga.* 148 (129 S. E. 861), and *McWhorter* v. *Settle*, 202 *Ga.* 334 (43 S. E. 2d 247). That the twenty-first amendment denies to liquor the full protection of the commerce clause of the Constitution in order to allow States to burden it with regulatory laws, was held in *Atkins* v. *Manning*, 206 *Ga.* 219 (56 S. E. 2d 260). See also *Scott* v. *State*, 187 *Ga.* 702 (3), 704 (2 S. E. 2d 65). But we are not here dealing with (a) the legality of the sales of whisky involved, (b) the protection of either the whisky or its sale by the commerce clause, or (c) whether the sales were made under a privilege or a right. Irrespective of which way each of these matters may be decided, this case would still be controlled by a decision as to whether or not the taxes sought to be recovered were paid on business done in this State. Therefore, we refuse to be diverted from this decisive question by consideration of the enumerated and numerous other irrelevant matters argued by counsel for the State. Since the law (Ga. L. 1937-38, Ex. Sess., p. 103) requires a license before any sale of whisky can be made in this State, and since in perfect harmony with that law there has been in force throughout the period of time covered by this suit a regulation of the Revenue Commissioner

requiring that all whisky sold becomes the property of the purchaser f. o. b. shipping point, it is simply illogical and unreasonable to contend that selling whisky by a nonresident who has no license to sell it in Georgia, upon orders taken in Georgia and approved by the Commissioner in conformity with the regulations, is doing business in Georgia and subjects the income arising therefrom to income tax by Georgia.

From what has been ruled it must be held that the court did not err in overruling the demurrer to the petition to recover income taxes paid, under the facts pointed out. Therefore, a ruling on the constitutionality of the Code sections, which is raised by the petition, becomes unnecessary.

2. But the Commissioner filed a plea to estop the petitioner from prosecuting this suit. This plea is based upon a written instrument signed by the taxpayer and a Deputy Director of the Department of Revenue, Income Tax Unit. Had this instrument been executed by an official of the State, empowered by law to execute it, the plea would be good, for the law believes in keeping one's word and meeting obligations, and it will so rule when possible. But the office of Revenue Commissioner is statutory and its powers must be conferred by statute. The attorneys for the State cite 43 Am. Jur. 219 for support of the contention that a deputy officer can perform all duties of the principal. We do not even go far enough to reach that contention because we are met at the very beginning with the fact that the instrument here relied upon was executed by neither the Revenue Commissioner nor a Deputy Revenue Commissioner. The law of this State does not empower the Deputy Director, Department of Revenue, Income Tax Unit, to execute on behalf of the State the contract here relied upon. The General Assembly obviously construed the statute as we do, else there would have been no need for the enactment of the amendment of 1951 wherein the office of Deputy Commissioner was created and given powers broad enough to include this contract. Ga. L. 1951, pp. 614, 616. The contract, being invalid, was binding upon no one, and the plea based thereon was properly dismissed on demurrer.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*

HEAD, Justice, dissenting. 1. I can not agree with the ruling that "with the exception that the commodities are different, the business transactions of this nonresident were in all material respects precisely the same as those in *Suttles* v. *Owens-Illinois Glass Co.*, 206 *Ga.* 849 (59 S. E. 2d 392); *Redwine* v. *Dan River Mills*, 207 *Ga.* 381 (61 S. E. 2d 771); and *Redwine* v. *U. S. Tobacco Co.*, 209 *Ga.* 725 (75 S. E. 2d 556)." On the contrary, except in so far as these cases may relate to the issue as to what constitutes "doing business," they are not in point on their facts and do not sustain the ruling made. In each of the above cases the alleged liability of the company for the taxes assessed was for determination by this court under general rules of law. The present case is controlled by an act of the General Assembly approved February 3, 1938, known as the "Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors" (Ga. L. 1937-38, pp. 103-124; Code, Ann. Supp., Chapter 58-10), which authorized the sale of alcoholic beverages and liquors in those counties of this State where a majority of the qualified voters participating in an election authorized under the act approved the sale thereof. Under the terms and conditions of this act, and the rules and regulations of the State Revenue Commissioner (named by the General Assembly as the administrator of the act) every phase of the operation of the nonresident liquor distilleries named as plaintiffs in the present case, is strictly regulated and controlled, which is not true of the business done in the three cases cited as controlling authority. As indicative of the law and regulations pursuant thereto, which must be complied with as to every alcoholic liquor to be offered for sale by any distillery, the brands and quality must be approved by the State Revenue Commissioner; the salesmen or employees representing the distillery must be approved by the Commissioner and granted a permit; the manner of shipment is limited to a common carrier, and the destination must be the State warehouses required by the act, which warehouses are under the management and control of the Commissioner. These requirements of the act and the regulations (and many others not set forth) clearly demonstrate that liquor distilleries do not, and can not, operate in this State in the manner employed by Owens-Illinois Glass Company, Dan River Mills, and U. S. Tobacco

Company. There is no question involved in the present case as to the right of the State to strictly regulate and control the business done in this State by nonresident distilleries. If these distilleries were engaged in any business other than the liquor business, the State would still have the right to prescribe. the terms under which these foreign corporations may carry on a business in this State. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727 (5 Sup. Ct. 739, 28 L. ed. 1137); Philadelphia Fire Asso. v. New York, 119 U. S. 110 (7 Sup. Ct. 108, 30 L. ed. 342); Hooper v. California, 155 U. S. 648 (15 Sup. Ct. 207, 39 L. ed. 297); Orient Ins. Co. v. Daggs, 172 U. S. 557 (19 Sup. Ct. 281, 43 L. ed. 552); Waters-Pierce Oil Co. v. Texas, 177 U. S. 28 (20 Sup. Ct. 518, 44 L. ed. 657).

In the opinion in the present case it is stated that, since the law requires a license before any sale of whisky can be made, "and since in perfect harmony with that law there has been in force throughout the period of time covered by this suit a regulation of the Revenue Commissioner requiring that all whisky sold becomes the property of the purchaser f. o. b. shipping point, it is simply *illogical and unreasonable* to contend that selling whisky by a nonresident *who has no license to sell it in Georgia* . . . subjects the income arising therefrom to income tax by Georgia." There are, as I view this case, many refutations of this particular reasoning. In this connection it might be properly suggested that this court has not always been in accord as to the power of the State Revenue Commissioner to promulgate rules and regulations. See *Glustrom* v. *State,* 206 *Ga.* 734 (58 S. E. 2d 534). Thus in the present case the rule promulgated to the effect that all "whisky sold becomes the property of the purchaser f.o.b. shipping point" might be seriously questioned as to its legality, when the rule in effect is in conflict with Code §§ 18-324, 18-325, 96-401, and 96-402. This rule, however, (as well as other rules hereinafter set forth) was in effect at the time the distilleries began operations in Georgia. Since the distilleries here involved did not at the time they qualified to operate in Georgia question, nor have they since (in this litigation or otherwise) questioned the legality of any rule promulgated by the Commissioner (but on the contrary have accepted and complied with such rules), it is now too late for such

distilleries to object or complain of any rule effective at the time they began their operations.

The distilleries allege in their petition that they have "designated resident and nonresident representatives." From this and other allegations of their petition it clearly appears that their representatives have procured the permit or license required by the Commissioner. It therefore appears beyond question that the distilleries, through their licensed representatives, had been licensed to sell whisky in Georgia. Any argument that these distilleries were not so licensed can not be sustained by the record, since without such license they could not have sold the first bottle of their whisky in Georgia.

As I view the judgment in the present case, it should be adverse to the contention of the distilleries that only the New York sales office had authority to accept or confirm orders. Under the rules and regulations promulgated by the Commissioner and in effect at all times during the period in which sales were made by the distilleries here involved, only the Commissioner could approve "sales," and when any "sale" was made, it could not be changed or modified without the consent in writing of the Commissioner. Rule 904 of the Commissioner provides: "A licensed wholesaler desiring to order distilled spirits from a licensed or registered producer shall first fill out in quadruplicate the shipping permit form prescribed by the Commissioner and forward the same for approval to the Commissioner who, if he approves, shall indorse the same, retain one copy, and send one copy to said wholesaler, one to said producer, and one to the State warehouse to which said distilled spirits are to be shipped. *No such order shall be changed without the Commissioner's written approval;* and if the order be canceled, said wholesaler and said producer shall return to the Department their copies of said approved shipping permit form." (Italics supplied.)

Under the rule above quoted, there does not exist even a fiction for the contention that the New York sales offices of the distilleries had any control of "sales." The Commissioner, and the Commissioner alone, passed on all questions related to sales, and the distilleries here involved have at all times acquiesced in and operated under this rule.

In each of the ten counts of the petition it is alleged in para-

graph one thereof that "its highest corporate officer resident in the State maintains his office in Fulton County, Georgia." As the writer will undertake to show in division three of this dissent, this allegation is refuted by every other material allegation of the petition, and particularly by paragraphs 9 and 10. This allegation, however, must be accepted as true in considering the tax liability of the distilleries here involved. This allegation most substantially distinguishes the present case from the three cases cited and relied upon. In neither of the three cases was it alleged that the corporation had a corporate officer residing in Fulton County, Georgia. If, as alleged, the distilleries maintained a corporate officer in Georgia for the operation of its business with offices in Fulton County, Georgia, then clearly and unquestionably such distilleries were "doing business" in Georgia and subject to the tax imposed.

2. The contract between the distilleries and the representatives of the State Revenue Commissioner, whether good or bad, legal or illegal, did not purport to relieve the distilleries of the tax assessed and paid, which I am satisfied was due and required of the distilleries under the law, for reasons heretofore set forth. As to the contract, however, it appears that the distilleries freely and voluntarily entered into it (if, indeed, they did not induce its execution), and by this contract they "lulled" the State Revenue Commissioner into a course of inaction. Having procured that for which the distilleries contracted (inaction by the Commissioner), it is, as I view it, contrary to law, equity, and good conscience to sustain the objection of the distilleries to the contract. Whether or not Cox had authority to execute the contract, it served the desires and purposes of the distilleries, and they procured benefits which have not and can not be restored to the State. The contract should therefore stand as a final disposition of any and all claims of the distilleries, related to the taxes paid.

3. While jurisdiction of the person may be waived, jurisdiction of the subject matter can not be conferred upon any court by waiver, consent, or failure to plead to the jurisdiction, and a judgment rendered by a court without jurisdiction of the subject matter is wholly void and of no effect. In the present case the Superior Courts of Fulton County did not have any jurisdiction

of the subject matter, and the judgment in the present case is for this reason void. In the acts of the General Assembly creating the Department of Revenue (Ga. L. 1937-38, Ex. Sess., pp. 77-103; Ga. L. 1945, pp. 272-274; Code, Ann. Supp., § 92-8436(b)), it is provided that a taxpayer shall have the right to sue for a refund "in the superior court of the county in which said taxpayer would have a right to appeal from a judgment by the State Revenue Commissioner." By the same acts (Code, Ann. Supp., § 92-8446) it is provided that the losing party may appeal "to the superior court of the county of the residence of the taxpayer, unless the taxpayer be a railroad or other public service corporation or *nonresident*, in which event the appeal of either party shall be to the superior court of *the county in which is located its principal place of doing business, or in which the chief or highest corporate officer resident in the State maintains his office.*" (Italics supplied.) In Code (Ann. Supp.) § 92-8445 it is provided that "No trial court shall have jurisdiction of proceedings to question" any assessment by the State Revenue Commissioner "except as in this Chapter provided." There is no other provision for questioning any assessment except that above set out. Eminent counsel for the distilleries, with adroitness and skill, have sought to bring their case within the provisions of the law by alleging in paragraph one that "its highest corporate officer resident in the State maintains his office in Fulton County." Elsewhere in their petition, and particularly in paragraphs 9 and 10, these distilleries show that they have no corporate officer in Fulton County, and that the only persons connected with such distilleries in any capacity are salesmen whose sole authority is to solicit orders for their products. Honorable Charles D. Redwine, duly qualified and acting State Revenue Commissioner, is a resident of Fayette County, Georgia. *Capitol Distributing Co.* v. *Redwine,* 206 *Ga.* 477 (57 S. E. 2d 578). Every State officer, in the absence of some statutory authority to the contrary, must be sued in the county of his legal residence, and in the present case the General Assembly has said that no trial court shall have jurisdiction "except as in this Chapter provided," and no court is granted jurisdiction under the allegations of the petition other than Fayette County, the county of the residence of the defendant.

In *Ga. Railroad & Banking Co.* v. *Redwine,* 208 *Ga.* 261 (66 S. E. 2d 234), Mr. Justice Candler stated the rule to be: "The parties to litigation cannot give to a court jurisdiction of the subject matter of a suit when it has none by law; and when a trial court, in a case over which it has as to subject matter no jurisdiction, renders therein any judgment except one of dismissal, and the case is brought here for review upon a writ of error, this court will of its own motion reverse the judgment whether exception to it for want of jurisdiction in the court below be taken in the bill of exceptions or not." If these distilleries are now to demand and receive back moneys out of the State treasury, all of which I believe to be taxes justly due on business done in Georgia, their demand should be sustained by the judgment of a court having jurisdiction of the subject matter. Under the allegations of the petition and the law applicable thereto, the Superior Court of Fulton County, in my opinion, had no jurisdiction of the subject matter, and the judgment is therefore wholly void and should be so declared by this court.