GEORGIA LUMBER AND VENEER CORPORATION, Plaintiff,

v.

SOLEM MACHINE COMPANY, Defendant.

Civ. A. 1165.

United States District Court
M. D. of Georgia, Macon Division.

Feb. 19, 1957.

Jones, Sparks, Benton & Cork, Macon, Ga., Alex S. Boone, Jr., Irwinton, Ga., Aaron L. Stein, Chicago, Ill., for plaintiff.

Martin, Snow & Grant, Macon, Ga., for defendant.

BOOTLE, District Judge.

In the State Court, the plaintiff, a Georgia corporation, sued the defendant, an Illinois corporation, for damages resulting from alleged breach of warranties of merchantability and fitness for purpose intended of a sander manufactured and sold by the defendant to plaintiff for smoothing and finishing the surface of plywood produced by plaintiff. The suit was served upon the Secretary of State in accordance with Section 22–1508, Georgia Code Annotated. Prior to the defendant's removal of the suit to this Court, it filed in the State Court its special appearance for the purpose of challenging the jurisdiction of that Court and filed also its motion to quash service advancing the contentions that it is an Illinois corporation, was not doing business in the State of Georgia within the

purview of Sections 1507–1510 of Title 22, Georgia Code Annotated, and that, therefore, the service upon the Secretary of State was ineffectual. This plea to the jurisdiction and motion to quash service were not passed upon by the State Court and stand now for disposition by this Court upon the pleadings, affidavits and documentary evidence.

I find the facts to be as stated in the footnote.[1]

1. The defendant is an Illinois corporation with its principal office and place of business in Rockford, Winnebago County, Illinois. It has a plant at Lockport, New York and Rockford, Illinois and has no other office or place of business anywhere. It does not maintain a warehouse for the storage of machines or parts in any place other than Rockford, Illinois and Lockport, New York. Neither does it maintain a bank account in any place other than Rockford, Illinois and Lockport, New York. It has no office, agency, or place of business in Georgia and has no agent, salesman or employee residing in Georgia. It has no salesmen or employees who solicit business from any persons in Georgia, either natural or artificial. It has no employees who are salesmen for its machines either on a salary or commission basis. All of its machines are sold by direct mail or through dealers or manufacturers' agents and it has no dealer or manufacturer's agent who sells its machines exclusively.

George A. Risell, of Atlanta, Georgia, is a manufacturer's agent representing a total of 27 manufacturers, including the defendant. His relationship as such with defendant began sometime during 1951, when he asked the vice-president of defendant in charge of operations whether he might quote prices on defendant's products to Belcher Manufacturing Company in Alabama. Defendant's vice-president assented to his doing so, advising Risell, however, that another dealer was negotiating with Belcher for the sale of a Solem machine. Subsequently, from time to time defendant furnished Risell price schedules and literature as to Solem machines and received inquiries from Risell as to prospects in Georgia. Defendant knew that Risell represented another wood working machinery manufacturer who competed directly with Solem machines and that he also represented other lines and defendant has never exercised any control over Risell as to the manner of his operating or whether he operated at all. Defendant paid Risell a commission for the sale of Solem machines, said commission being payable when and if the payments on the machine were made.

It is defendant's practice and a part of its contract to furnish a demonstrator to start all machines sold by it in the United States, and for this purpose defendant maintains two salaried service men, neither of whom has ever resided in Georgia. The starting of a machine does not include the installation of the machine, but does include an inspection of it to see that it is properly installed and a demonstration of its operation and an instruction of the employee of the purchaser who will handle its operation. Defendant makes no contract with any purchaser to maintain and service the machines. It has, from time to time, when a customer has had difficulties with a machine, as an accommodation to the purchaser and in order to maintain good will, sent Russell (not Risell) or Kilborn, the two service men, to the plant of the purchaser to assist the purchaser in relieving any trouble of the purchaser. Its general practice is to make a charge for this service, not with the thought or purpose of making a profit out of the servicing of the machines, but to limit its loss. The servicing of the machines is not entered into for profit and is not a profitable operation. The purpose of the employment of the two service men is to demonstrate the machines sold to customers and occasionally to assist dealers and manufacturer's agents who are not familiar with the details of the machines. Any servicing of the machines after acceptance by the customer is incidental and as an accommodation to the customer. Insofar as defendant was concerned, Risell, the manufacturer's agent, was under no duty to call on plaintiff after the machine was installed. When he did so, it was for his own purpose and to maintain cordial relations with his customer. There was no guaranty or warranty in connection with the sale of the machine to plaintiff or to any other customer, except that contained in the contract, which is to "ship in good order * * * delivered F.O.B. Rockford, Illinois" and "in case of the rejection for good and sufficient cause of the property above mentioned the buyer will promptly re-deliver the same in good order to the seller F. O. B. original shipping point * * *"

The sanding machine made by defendant is used in connection with abrasion of lumber products. Although defendant

has sold these machines to companies resident in 35 states in the United States and in several foreign countries, the sale of the machines is limited principally to those companies engaged in the manufacturing of furniture and plywood and defendant has only four customers in Georgia. All sales by defendant of its machines have been consummated in, and were payable in, Illinois.

The machine purchased from defendant by plaintiff was sold through Risell, who at no time has had authority to make a binding contract on behalf of defendant, his only authority being to take an order and submit the same to the defendant who accepts or rejects the same in its discretion. Risell has at no time had authority to quote a firm price, any quotation made by him being subject to acceptance or rejection by defendant. In negotiating with plaintiff for the purchase of the machine involved in this case, Risell was acting for himself and could have submitted the order to any other manufacturer of similar equipment, had he so desired. When defendant received advice from Risell that plaintiff desired to purchase one of its machines, it prepared the order on its form and sent the same to Risell to have the same executed by plaintiff. The purchase price set out in said order included the cost of Solem sending a demonstration man to Toomsboro, Georgia to start the machine. Thereafter the order was executed by the plaintiff on October 20, 1952 "subject to approval by seller at home office" and returned to defendant at Rockford, Illinois where it was formally accepted by defendant on October 22, 1952. The machine was shipped to the plaintiff at Toomsboro, Georgia in due course. Russell, the demonstrator, came to Georgia to start the sander on February 2, 1953. He started the same, and, on February 10, 1953, plaintiff's plywood plant foreman wrote defendant as follows: "Your service man, Mr. James Russell was with us last week, and with his able instructions and help, we made good time setting up and starting our new sander. At this time we wish to express our appreciation to your Company for this assistance on this particular piece of machinery."

Risell's territory as manufacturer's representative for defendant was Georgia, and parts of Alabama and South Carolina. He has never had a written contract with defendant. His sales area was not on an exclusive basis. Whenever he contracted a prospective customer in behalf of defendant or any other company he represented he would make a complete examination of the plant considering engineering production and cost problems and then make a recommendation to the prospect as to the type of machine needed. He kept on hand literature as to machines sold by the companies he represented and price sheets. As above stated, the contract in this instance between plaintiff and defendant, dated October 20th, 1952, was actually prepared by defendant.

Prior to August 16, 1954, the date suit was filed in this case, Risell had sold a total of three machines for defendant, including the one sold to plaintiff, one sold to McCann Lumber Company of Doctortown, Georgia and one sold to W. E. Belcher Lumber Company at Centerville, in the State of Alabama, so that he had sold only two machines in Georgia. He had two other prospects in Georgia, but they did not place orders. When Risell negotiated a sale of one of defendant's machines a plate listing his name as manufacturer's agent and his address was placed on the machine. Risell called on plaintiff approximately once a month after the purchase of the machine in question and attempted to ascertain the cause of plaintiff's dissatisfaction. There was a limited correspondence between Risell and defendant in reference to plaintiff's complaints.

The starting of the sander by Russell on February 2, 1953 was at the defendant's expense. At the instance of plaintiff there were five service-man visits to plaintiff's plant as follows: February 28, 1953, Russell for 16 hours working time; May 18, 1953, Russell for 24 hours working time; December 5 to 10, 1953, Russell for five days working time; January 27, 1954, Kilborn less than one day's working time and March 24 to 31, 1954, Russell for 43 hours working time.

As to the February 28th visit, plaintiff wired defendant on February 19, 1953 "Sander not working satisfactory. Advise when can send your Mr. Russell." Included in defendant's reply was advice that the usual charge for service calls after a machine was demonstrated was $20 per day, plus traveling and incidental expenses, but that defendant would await Mr. Russell's report of his call before determining whether or not plaintiff should be charged for this service call. Defendant billed plaintiff for the 16 hours working time plus $61.23 expenses and plaintiff complained of the charge as being exorbitant in view of the fact that it was using a cement as recommended by Russell and by defendant's instruction bulletin. Risell, the manufacturer's agent, also wrote defendant requesting can-

This question of jurisdiction consequent upon doing business is answerable by Georgia law. Rosenthal v. Frankfort Distillers Corp., 5 Cir., 193 F.2d 137(3); Smith v. Ford Gum & Machine Co., 5 Cir., 212 F.2d 581(2 and 3). This would be true if the case had originated in this Court, Smith v. Ford Gum & Machine Co., supra, and is even more plainly true inasmuch as the case originated in the State Court and was removed to this Court, Rosenthal v. Frankfort Distillers Corp., supra; Polizzi v. Cowles Magazines, 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331. In a removal case Federal jurisdiction is derivative and

cellation of this charge, and it was cancelled.

The May 18th visit was in response to a telephone call from plaintiff to defendant that the drive shaft had sheared off and bed slides were not getting oil. Defendant wrote plaintiff that Russell could not come and defendant would get a Mr. Foertsch to come and that the expense to plaintiff would be just what Mr. Foertsch would charge defendant, $32.00 per day, plus expenses while away from Chicago. It developed, however, that Russell was able to go, and did go. In view of plaintiff's refusal to pay the February charge, no charge was made for this visit.

As to the December visit, plaintiff had telephoned that it was having trouble sanding its ⅝ inch 7-ply panels. Risell, the manufacturer's agent, had also written defendant of plaintiff's trouble and asked that defendant assist plaintiff. Russell concluded that the extreme heat of the plywood would call for heat resistant rubber cushions. Defendant so wrote plaintiff and advised that Russell's expenses amounted to five days at $30.00 per day, plus $165.80 miscellaneous, and sent an invoice for these amounts. Plaintiff refused to pay this bill and also refused to pay the two notes for $682.50 each, due December 31 and January 31. The visit of January 27, 1954 was incidental by Kilborn who was in an adjoining state and visited plaintiff's plant to see if a double deck sander would improve their operation. No record of the expense of this visit was kept by defendant.

The March visit was in reference to plaintiff's request by letter and telephone and defendant, in an effort to maintain good will and to secure the payment of the final two notes, agreed to furnish the hard rubber cushions and also to send Russell.

Risell, the manufacturer's agent, while calling at plaintiff's plant on September 26, 1952, obtained the signature of plaintiff's vice-president to a purchase order for this sander and forwarded it to defendant. The purchase price stipulated therein and in the contract which followed was $13,650. $3,412.50 was paid immediately by plaintiff's check and, on November 15, 1952, plaintiff mailed defendant 15 notes for $682.50 each covering the unpaid balance, all dated October 31, 1952 and all payable "at 668 Rose Street, Rockford, Illinois." Defendant instructed its Illinois bank to send these notes to the Milledgeville Banking Corporation, Milledgeville, Georgia for collection at maturity. The first 13 notes were paid through the Milledgeville Bank approximately when due. The final two notes have not been paid. There were introduced in evidence defendant's accounts receivable ledger sheets with plaintiff and three other Georgia customers, Georgia Pacific Plywood and Lumber Company of Savannah, Georgia, Pioneer Products Co., Inc., of Doctortown, Georgia and Georgia Plywood Corporation of Dublin, Georgia. As explained by affidavits, these show, among other things, that Pioneer Products Co., Inc. was, by plaintiff, charged $377.44 on July 7th, 1953 covering 48 hours working time and expense of $185.44, which charge was made for installing certain repairs on sander drum and bearings and certain new bed ways and was overpaid in advance by the customer; that charges against and paid by Georgia Pacific Plywood Company of $274.26 on March 12, 1953 and $314.89 on July 31, 1954 were for Russell's services rendered pursuant to that customer's special request, that the former charge represents 40 hours in supervising a general overhauling of one sander and helping customer select certain replacement parts for another sander and that the latter charge represents 44 hours in connection with the installation of parts selected and ordered by this customer as recommended by Russell; and that in November, 1954 Russell was sent to Georgia Pacific Plywood and Lumber Company plant in Georgia to set up or demonstrate a machine which had been sold with the understanding that the defendant would supply a free demonstrator for it. These ledger sheets show numerous direct purchases from defendant by these four customers of supply and repair parts.

the Federal Court must pass upon objections to the jurisdiction of the State Court. Ultra Sucro Co. v. Illinois Water Treatment Co., D.C.S.D.N.Y., 146 F. Supp. 393. The Federal law on this question of doing business comes into play only when the State law asserts jurisdiction and the foreign corporation defendant then claims that the jurisdiction so asserted violates the due process clause or the interstate commerce clause of the Federal Constitution. Rosenthal v. Frankfort Distillers Corp., supra.

We find the Georgia law expressed in the following cases: Vicksburg, Shreveport & Pacific Ry. v. De Bow, 148 Ga. 738, 98 S.E. 381; Southeastern Distributing Co. v. Nordyke & Marmon Co., 159 Ga. 150, 125 S.E. 171; Suttles v. Owens-Illinois Glass Co., 206 Ga. 849, 59 S.E.2d 392; Redwine v. Dan River Mills, Inc., 207 Ga. 381, 61 S.E.2d 771; Redwine v. United States Tobacco Co., 209 Ga. 725, 75 S.E.2d 556; Smith v. Nolting First Mortgage Corp., 45 Ga.App. 253, 164 S.E. 219; Dowe v. Debus Mfg. Co., 49 Ga.App. 412, 175 S.E. 676; Montag Bros., Inc., v. State Revenue Comm., 50 Ga.App. 660, 179 S.E. 563; and Williams v. American Refrigerator Transit Co., 91 Ga.App. 522, 86 S.E.2d 336.

Judge George, in Vicksburg, Shreveport & Pacific Ry. v. De Bow, supra, wrote, 148 Ga. on page 744, 98 S.E. on page 384, "[W]here a foreign trading or manufacturing corporation has a *resident* agent within this state, who through solicitation obtains an order from a person within this state, although such order is taken subject to the approval of the corporation at its foreign office or place of business, such corporation may be required to answer in this state to such person for a cause of action arising out of business or transactions so initiated," (Emphasis supplied), and goes on to say "[W]hile a foreign corporation, with a soliciting agent *within the state,* may be required to answer here for a breach of contract or duty arising out of business so procured, the mere solicitation of business within the state, 'unaccompanied by a local performance of contract obligations,' is not 'doing business' within the state, so as to bring the corporation within the jurisdiction of the courts of the state." (Emphasis supplied.)

In Southeastern Distributing Co. v. Nordyke & Marmon Co., supra, the Court, 159 Ga. on page 159, 125 S.E. on page 175, quotes approvingly from People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, " '[A]s to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that state, * * * the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it' ", and then adds "[T]hese agents were not *domiciled* in the state, and did not have the right or authority to make sales on account of the American Tobacco Company, collect money, or extend credit for it. Under these facts the Supreme Court of the United States held that the American Tobacco Company was not doing business in the state of Louisiana so as to be subject to the processes of the courts of that state." (Emphasis supplied.)

In the recent case of Redwine v. United States Tobacco Co., 1953, 209 Ga. 725, 75 S.E.2d 556, 558, the Court said:

"In Vol. 13 Words and Phrases, p. 126, under 'doing business', will be found a collection of authorities dealing with what activities will constitute 'doing business.' It seems to be rather well established by all the authorities that 'doing business' in order to incur tax liability under statutes imposing taxes on persons 'doing business' in a State means that a foreign corporation must transact some substantial part of its ordinary business, and that it must be continuous in character as distinguished from a mere casual or occasional transaction; that a single or several transactions is not neces-

sarily conclusive on the question of whether the corporation is 'doing business.' Some courts have held that the occasional sale of samples previously sent into a State, was not, alone, sufficient to amount to 'doing business.' The term 'doing business' has been held to mean more than the term 'transacting business.' It has been held that the fact that, on an occasional failure of a party ordering goods to take them, the broker through whom they were ordered was requested by the corporation to sell them on its account did not amount to 'doing business.' These rulings are all by courts of other states and will be found in Words and Phrases, supra.

"Whether a person makes money or not, of course, does not determine his liability for taxes under the statute here considered. But whether or not the activities under consideration are engaged in for the purpose of making a profit is important. The isolated instances alleged in the petition above quoted were not for the purpose of making a profit, and none was ever realized or intended to be realized."

■ In Dowe v. Debus Mfg. Co., supra, Presiding Judge Jenkins wrote:

" 'It is essential to the legal rendition of a personal judgment against a foreign corporation, otherwise than by its voluntary appearance, that the corporation be doing business within the state.' Vicksburg, Shreveport & Pacific Ry. v. DeBow, 148 Ga. 738(1), 98 S.E. 381. The character of the activities engaged in by the foreign corporation, which are essential to give the courts of this state such jurisdiction over it, do not consist in the mere solicitation of business within this state by persons seeking and taking orders on commission and transmitting them to the home office for acceptance and shipment, even though the foreign corporation may lend its assistance to the local salesmen by advertising its product within the state, and may aid, train and assist them, in increasing their efficiency in the discharge of their own activities as local salesmen, with the result that such increased efficiency may indirectly have the effect of increasing or expanding the business of the foreign corporation,"

thus recognizing the general rule that "mere solicitation of business" will not suffice. Then he continued:

"But in order for the foreign corporation to be doing business within this state in the sense which would subject it to personal judgment by the courts of this state, it must either maintain an office or place of business within the state, or else there must be a local performance on its part of its own contractual obligations to customers, otherwise than by the mere interstate shipment of goods sold by local solicitors. Southeastern Distributing Co. v. Nordyke & Marmon Co., 159 Ga. 150, 157–161, 125 S.E. 171; Smith v. Nolting First Mortgage Corp., 45 Ga.App. 253(1), 254, 164 S.E. 219; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587."

■ In the instant case it would not help much to inquire, as was carefully done in the case of Frene v. Louisville Cement Co., 77 U.S.App.D.C. 129, 134 F. 2d 511, 146 A.L.R. 926, what minimal activities in addition to mere solicitation will suffice to give jurisdiction because here we do not have even the "mere solicitation." The defendant has solicited no business in Georgia through agents domiciled or stationed here, or sent here. A manufacturer's agent, or broker, procured the sales of all items, except the minor repair and supply items and these were ordered by the Georgia customers directly from the defendant's home office and place of business in Illinois.

The only "local performance of contract obligations" done by defendant in Georgia was the furnishing of the "services of demonstrator to start sander" as to the sander involved in this case, and

to set up or demonstrate in November, 1954 a machine which it sold to Georgia Pacific Plywood and Lumber Company, and under the teaching of York Manufacturing Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, such performance would not be sufficient to constitute doing business in this State.

I perceive the Georgia law to be not materially different from the Mississippi law as written in Davis-Wood Lumber Co. v. Ladner, 210 Miss. 863, 50 So.2d 615, and as analyzed by Chief Judge Hutcheson in Mississippi Wood Preserving Co. v. Rothschild, 5 Cir., 201 F.2d 233, 238. The facts in the case last cited are closely analogous to our facts. There the foreign corporation agreed to construct and deliver to plaintiff two creosoting cylinders for use in plaintiff's plant at Brookhaven, Mississippi and the tanks were manufactured, shipped to, and installed by plaintiff. The door of one of the cylinders ruptured and was sent to the foreign corporation for repair and was sent back and in the course of tests ruptured again. Taken back, it was again repaired. While practically all of the work was done by the foreign corporation out of Mississippi, the foreign corporation had representatives in Mississippi at the time of the testing and at both of the occasions when the repaired and the new doors were installed. Moreover, the foreign corporation had fabricated for plaintiff's plant at Brookhaven and shipped to and set up there four oil tanks and had manufactured four small oil tanks and shipped them to another customer in Mississippi. In that case Judge Hutcheson wrote:

"Giving full effect to these significant passages and noting the recurrence in them of, and the emphasis upon, continuity, series, succession, congeries, as contrasted with occasional, single, sporadic, episodic, it is quite clear that while a literal reading of the statute would bring the defendants within its terms since they did do an act in the state and the cause of action sued on grew out of it, it is equally clear that the Supreme Court in the Davis case has not so construed the statute. On the contrary, it has made it plain that it does not construe it literally and as conferring jurisdiction on a single act or acts, but construes it as requiring a series of acts amounting to a continuity before it can be held under the statute, that there is a doing of business in the state."

As was written by Associate Justice Rutledge (later Associate Justice of the United States Supreme Court) in Frene v. Louisville Cement Co., supra [77 U.S. App.D.C. 129, 134 F.2d 516]:

"Although a wide breach has been made by the nonresident motorists' statutes, the principle probably still holds generally that merely casual or occasional acts, not constituting a regular or continuous course of business, are not sufficient to sustain personal jurisdiction over nonresidents or foreign corporations."

The conclusions here reached are, of course, in line with the holding and reasoning in the case of Robbins v. Benjamin Air Rifle Co., 5 Cir., 209 F.2d 173. The Court there held that activities of a manufacturer's representative who was representative for ten other manufacturers and who did no more than solicit orders for manufacturers' product were not sufficient to make the corporation amenable to service within the State of Texas. In the body of the opinion, the Court says that supervision of installation and servicing which employ local help when necessary are local acts, and cites 146 A.L.R. at page 591, which says: "Undertaking to service or keep in repair articles sold by a foreign corporation through its soliciting agent in a state has been repeatedly considered to make the corporation amenable to state jurisdiction for purposes of service of process." In the instant case the defendant had no soliciting agent in Georgia, nor did it undertake to service or keep in repair the articles it sold. It undertook only to furnish a demonstrator to start the sander and it did not employ any local help in that connection. The demonstrator's

subsequent visits into the state in reference to plaintiff's complaints were made at the insistence of the plaintiff and did not constitute activities "for the purpose of making a profit." Redwine v. United States Tobacco Co., supra.

Accordingly, counsel for defendant may prepare an appropriate order sustaining its objections to the jurisdiction of this Court and quashing the service and submit the same to counsel for the plaintiff, who shall have three days for suggestions as to form.