## 40337. LAMEX, INC. v. STERLING EXTRUDER CORPORATION.

DECIDED FEBRUARY 5, 1964.

*Albert E. Mayer,* for plaintiff in error.

*Sutherland, Asbill & Brennan, James P. Groton,* contra.

BELL, Presiding Judge. ■ The tenor of our summary judgment procedure is that it deals with the merits of an issue; and that if granted in favor of a claimant it affirmatively adjudges the merits of the claim, and if in favor of the defendant the judgment is in bar and not in abatement. Because of the general tendency to view a summary judgment in that fashion, we wish to make it clear that we do not accept the motion before us as being one for a summary judgment in the common sense nor do we consider the judgment on the motion rendered by the trial court as the grant in that perception of a motion for summary judgment. Although each of the parties and their counsel, together with the trial judge, seem to call the thing a motion for summary judgment, we are not at all interested in its nomenclature but accept it for what we think it is, i.e., a motion by whatever appellation called which is sufficient in its substance to have brought into the hearing on it the clear-cut issue raised by the plea to the jurisdiction and that issue only. Therefore, both the judgment of the trial court and the judgment of affirmance of that judgment by this court only adjudicate the one point that the defendant is not doing business in Georgia and for that reason is not subject to the jurisdiction of the courts of our State.

■ Personal jurisdiction of Georgia courts over a foreign corporation is not secured by personal service on the defendant's president while he is sojourning in Georgia, whether he came voluntarily or was lured into the State under false pretenses, as defendant contends.

"It is essential to a legal rendition of a personal judgment against a foreign corporation, otherwise than by its voluntary appearance that the corporation be doing business within this State in such a manner and to such an extent as to warrant the inference that it is present in the State. *Vicksburg, Shreveport & Pacific R. v. DeBow,* 148 Ga. 738 (1) (98 SE 381); *Southeastern Distributing Co. v. Nordyke & Marmon Co.,* 159 Ga. 150, 157 (125 SE 171)." *Sterling Materials Co. v. McKinley,* 218 Ga. 574 (129 SE2d 770). See also *Code Ann.* § 22-1507.

The question of jurisdiction consequent upon doing business in the State is primarily determined by Georgia law; Federal law related to due process or the interstate commerce clause is not applicable unless the foreign corporation pleads that the assertion of jurisdiction violates the Federal Constitution. Rosenthal v. Frankfort Distillers Corp., 193 F. 2d 137 (5th Cir.); Smith v. Ford Gum & Machine Co., 212 F. 2d 581 (5th Cir.); Georgia Lumber &c. Corp. v. Solem Machine Co., 150 F. Supp. 126, 130 (M.D. Ga. 1957).

Plaintiff contends that defendant's presence in Georgia during a two- or three-week period adjusting and modifying the machine in an effort to make it a workable installation constituted "doing business" in Georgia. Plaintiff contends further that its own president for a period of several days acted as agent for defendant in directing modifications of the die and that several local plants were directed by defendant to make these adjustments.

However, even if we agree arguendo, the acts performed were still part of a single transaction, namely attempts to make the extruding machine "a workable installation," and the time expended, if attributed to defendant, would not have extended defendant's presence in Georgia beyond three weeks, and is, therefore, nothing more than an isolated incident.

Plaintiff does not show that defendant made any other attempt to sell to any customer in Georgia or sought or received any income from Georgia. Its activities in the State were clearly limited to carrying out the terms of a contract negotiated and made in interstate commerce in Illinois and New Jersey with a third party, the Delta Company.

In a recent Georgia income tax case expounding the law on "doing business" in Georgia, *Redwine v. U. S. Tobacco Co.*, 209 Ga. 725, 728-729 (75 SE2d 556), the Supreme Court said: ". . . It seems to be rather well established by all the authorities that 'doing business' in order to incur tax liability under statutes imposing taxes on persons 'doing business' in a state means that a foreign corporation must transact some substantial part of its ordinary business, and that it must be continuous in character as distinguished from a mere casual or occasional transaction; that a single or several transactions is not necessarily conclusive on the question of whether the corporation is 'doing business.' . . . The term 'doing business' has been held to mean more than the term 'transacting business.' "

In ruling on an individual's claim that he was not subject to the jurisdiction of the Texas courts, relying on the due process clause of the U. S. Constitution, this court stated, in *Allied Finance Co. v. Prosser,* 103 Ga. App. 538, 541 (119 SE2d 813): "We interpret 'doing business' to mean the engagement for profit in some practice either repeatedly or possibly with the intention that the practice be repeated. To extend the term 'doing business' to include the making of one contract with a resident of Texas as its act provides would render due process as it has applied to foreign individuals a complete nullity. . . . While the rule has understandably been stretched for reasons of public policy to include motorists statutes and insurance statutes . . . it is unthinkable that it should be expanded to cover the individual who enters into a single transaction with no intention of doing more."

More recently, the Georgia Supreme Court held, in *Sterling Materials Co. v. McKinley,* 218 Ga. 574, supra: "When the question is one of the jurisdiction of the courts of this State to render a personal judgment against a foreign corporation in an action brought with reference to a business transaction initiated by the taking of an order in Georgia by an agent of the corporation, the term 'doing business' will not be extended to include a single, isolated business transaction but rather will be limited to the engagement for profit in some practice repeatedly

or with the intention that the practice be repeated. *Allied Finance Co. v. Prosser*, 103 Ga. App. 538, 541 (119 SE2d 813); 23 Am. Jur. 353-356, Foreign Corporations, § 370. See *Redwine v. U. S. Tobacco Co.*, 209 Ga. 725, 728 (75 SE2d 556)."

In Georgia Lumber &c. Corp. v. Solem Machine Co., 150 F. Supp. 126, supra (a persuasive opinion by District Judge Bootle based on Georgia law where a diversity suit was removed from a Georgia court before the court ruled on plea to the jurisdiction), a foreign manufacturer of a complex sanding machine was sued by a Georgia customer for breach of warranties. The manufacturer had sold several machines to different Georgia companies through a manufacturer's agent residing in Atlanta. The manufacturer was obligated by contract with each purchase to inspect the machine after installation, to demonstrate its operation and to instruct the buyer's employees how to operate it. The manufacturer made a practice of furnishing repair service at nominal charges as an accommodation to the customers. The evidence showed that the manufacturer's servicemen had spent 32 days in this State working on machines defendant sold to plaintiff and its other customers in Georgia. Judge Bootle held that under Georgia cases the demonstrator's subsequent visits into the State in reference to plaintiff's complaints were made at the insistence of the plaintiff and did not constitute activities for the purpose of making a profit, within the meaning of *Redwine v. U. S. Tobacco Co.*, 209 Ga. 725, supra. The defendant was held not to have been "doing business" in Georgia.

The plaintiff places great emphasis on the fact that the machinery involved in this case was expensive, complex and partially experimental and that the defendant made modifications and adjustments rather than mere repairs. These factors do not remove the original sales contract from interstate commerce, however. In York Mfg. Co. v. Colley, 247 U.S. 21, 25 (38 SC 430, 62 LE 963, 11 ALR 611), involving a four-week installation and testing of an ice plant, the United States Supreme Court in finding that York was not "doing business" in Texas stated that: "The only possible question open, therefore, is, Was the particular provision of the contract for the service of an engineer to assemble and erect the machinery in

question at the point of destination and to practically test its efficiency before complete delivery relevant and appropriate to the interstate sale of the machinery? When the controversy is thus brought in last analysis to this issue there would seem to be no room for any but an affirmative answer. Generically this must be unless it can be said that an agreement to direct the assembling and supervision of machinery whose intrinsic value largely depends upon its being united and made operative as a whole is not appropriate to its sale. The consequences of such a ruling, if made in this case, would be particularly emphasized by a consideration of the functions of the machinery composing the plant which was sold, of its complexity, of the necessity of its aggregation and unison with mechanical skill and precision in order that the result of the contract of sale—the ice plant purchased—might come into existence."

This decision was followed in *City of Atlanta v. York Mfg. Co.*, 155 Ga. 33 (116 SE 195) which involved essentially the same set of facts, i.e., the status of a foreign corporation selling and installing ice plants in Georgia.

Note that in these installation cases the plants had been purchased by the Georgia customers from the foreign corporation being sued as "doing business" in the State. There was a direct contractual relationship with, and income derived from, a resident of the state where the suit was brought. Furthermore, in each of these cases the foreign corporation undertook to perform the complete installation of the machine as a regular part of its method of doing business. In the case before us: no part of the contract of sale of the machine took place in Georgia; Sterling did not sell directly to a Georgia resident; it did no soliciting or selling in Georgia; and derived no income from this State. It did not install the machine, but only came in later to perform adjustments or modifications needed to make the machine work. On the basis of these authorities, Sterling's activities did not constitute "doing business" in Georgia, and it is not subject to the jurisdiction of Georgia courts. There is nothing in any of the three foreign cases relied upon by plaintiff to suggest persuasively that we should stray from the rules previously laid down by our own courts in similar cases.

∎

The judgment of the trial court finding in effect that the defendant was not doing business in Georgia and for that reason was not subject to the jurisdiction of this State's courts is affirmed.

*Judgment affirmed. Hall and Pannell, JJ., concur.*