COLUMBIA NITROGEN CORPORA-
TION, Plaintiff,

v.

STRUTHERS WELLS CORPORATION,
Defendant.

Civ. A. No. 1387.

United States District Court
S. D. Georgia,
Augusta Division.

Dec. 18, 1969.

Jack W. Tarver, Augusta, Ga., for plaintiff.

John M. Sikes, Jr., Joe C. Freeman, Jr., Atlanta, Ga., for defendant.

### ORDER

LAWRENCE, Chief Judge.

In this suit the defendant which is a foreign corporation is charged in tort and contract counts with having defectively manufactured a piece of equipment it shipped to plaintiff in Georgia and which "failed and cracked" after installation in plaintiff's Augusta plant. Defendant has moved to dismiss for want of jurisdiction.

I long vacillated over the problem. Indeed, I found myself perilously close to the predicament of Buridan's Ass, a hypothetical creature reputedly invented by the fourteenth century philosopher, Jean Buridan. It seems that two bales of hay were set before the ass for each of which it had a perfectly balanced desire. Unable to choose between the two bales, the unfortunate animal starved to death.

What I did was to hesitate between a literal and a libertarian interpretation of the provision of Georgia's "long arm" statute which confers jurisdiction over a non-resident who "commits a tortious act within this State." [1] Does this language mean that a tort is committed within Georgia where an article shipped into this State is unfit for the intended use because of its negligent manufacture?

In a comprehensive article on the subject of the statute Donald A. Weissman of the Atlanta Bar has said, "Georgia, thus, has a clear choice. It may follow the liberal approach of the *Gray* case [Gray v. American Radiator and Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761] and in effect evidence a willingness to assert jurisdiction over

---

1. Georgia Code, § 24–113.1(b).

all non-residents who injure someone within the state, or follow the New York reasoning and search for other factors which more logically support the exercise of jurisdiction." [2]

Though pleaded by defendant, none of us gave much consideration to the point that the alleged tort and breach of warranty occurred prior to the 1968 amendment to the Georgia "Long Arm" law under which that statute was extended by the Legislature to corporations. After all, in Wilen Manufacturing Co. v. Standard Products Co., 409 F.2d 56, the Fifth Circuit Court of Appeals had stated in reversing a District Judge in the Northern District of Georgia: "The exclusion of corporations would have no basis in history or logic and would be contary to the *raison d'etre* of the long arm. We conclude it was not intended by the Georgia General Assembly." [3]

Most of the emphasis in the argument in Columbia Nitrogren v. Struthers Wells was on the matter of interpretation of the "long arm" statute in respect to torts committed outside of Georgia. However, counsel for defendant contended that whether viewed as a tort or contract there could be no finding of jurisdiction because of defendant's lack of minimal contacts. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

At the height of my indecision O'Neal Steel, Inc. v. Smith, 120 Ga.App. 106, 169 S.E.2d 827 was handed down by the Court of Appeals. Two Judges in Georgia's Northern District had tried to divine what the courts of the State would do where the "long arm" statute was

sought to be applied to a person inflicting injury within Georgia from without.[4] In each instance it was decided that the State courts would hold that Georgia had jurisdiction over the foreign corporation under § 24–113.1(b). The United States Judges proved less than clairvoyant. In an able opinion Judge Homer Eberhardt, speaking for the Court of Appeals in *O'Neal Steel*, held that the "long arm" statute means what it says and cannot be construed to give jurisdiction where a non-resident corporation commits a tortious act outside the state causing injury within. "If our legislature meant something other than what is plainly indicated by the words used, it could have used language appropriate to indicate a different intent." [5]

The Court of Appeals had solved my dilemma. Judge Eberhardt had told me what bale of hay to eat. However, I decided to hold up the dismissal of the action pending disposition of a possible application to the Georgia Supreme Court for certiorari. No need for haste. The case had only been in this Court's breast and on its mind for a few months.

Meanwhile, another appeal relevant to this case reached the Supreme Court of Georgia. Bauer International Corporation v. Cagles, Inc., Ga., 171 S.E.2d 314 involved a suit on open account against a New York corporation which customarily made purchases of food products from the Georgia plaintiff. The questions included the matter of sufficiency of minimum contacts as a basis for jurisdiction under the provision of the "long arm" statute extending jurisdiction over persons transacting "any business within

2. "The Georgia Long Arm Statute," 4 Georgia State Bar Journal (1967), 31.

3. This was also the view of Mr. Weissman in the article cited in footnote 2.

4. Scott v. Crescent Tool Company, D.C., 296 F.Supp. 147; Burton v. Will Scientific, Inc.; Owens Illinois, Inc. et al., N.D., 1966, No. 10286.

5. In a case note on O'Neal Steel, Inc. v. Smith, which recently appeared in

6 Georgia State Bar Journal, 205f, the reviewer stated: "While the narrow construction of 'tortious act' undoubtedly will benefit some defendants who would otherwise be forced to defend or collaterally attack the judgment at their peril, the *O'Neal Steel* decision will at the same time aid future plaintiffs by clarifying the jurisdictional issue and thereby forestalling much expensive but futile litigation."

this State." Another issue was whether the 1966 statute applied to corporations. About the same time that Bauer International Corporation v. Cagles, Inc. was docketed the Supreme Court of Georgia granted certiorari in *O'Neal Steel.*

The decisions in the two cases were handed down last week. The Supreme Court did not tell us whether the Court of Appeals of Georgia was correct in its restrictive view of § 24–113.1(b). Nor did it enlighten as to the meaning of "Transacts any business within this State." The Court disposed of both cases by holding that the word "non-resident" in the 1966 "long arm" statute did not include corporations and further that the 1968 amendment, which extended the law to include them, is inapplicable to causes of action arising prior to the effective date thereof.

■■■ Columbia Nitrogen Corporation cannot rely upon the "long arm" statute to obtain jurisdiction over the defendant corporation. If it exists here, its basis must be the statutes and decisional law of Georgia.[6] Until the "long arm" statute was enacted the controlling concept in jurisdiction over foreign corporations in tort or contract cases was that of "doing business," (Ga.Code § 22–1507 et seq.) and that term means more than "transacting business." Redwine v. United States Tobacco Co., 209 Ga. 725, 728–729, 75 S.E.2d 556; Lamex, Inc. v. Sterling Extruder Corporation, 109 Ga. App. 92, 135 N.E.2d 445.

■■ Was Struthers Wells Corporation doing business in Georgia?

The complaint alleges that on November 13, 1962, Columbia Nitrogen Company, through C. F. Braun & Co., purchased an ammonia synthesis converter vessel which on September 21, 1966, failed and cracked. The affidavits and exhibits attached to the motion to dismiss are not controverted. The Braun Company is an engineering-construction concern and is located in California. It contracted with plaintiff to build a nitrogen plant at Augusta, Georgia. In connection with the equipment installed Braun sent a purchase order to Struthers Wells Corporation. The manufacturing process took place entirely in Pennsylvania where defendant, a Maryland corporation, has a plant. No part of the conception, negotiations or engineering occurred in Georgia. The defendant did not install the the vessel. It maintains no office here. Payment to Braun was to be made on billings sent to California. Defendant's only connection with Georgia was the shipment of the vessel to the contractor at Augusta, F.O.B. Titusville, Pennsylvania. This State had little more to do with the transaction than to furnish the space which the ammonia converter vessel occupied in Richmond County.[7]

It is clear that Struthers Wells Corporation was not doing business in Georgia. It is not subject to suit in the courts of this State. The motion to dismiss is granted.

---

6. Of course, the question becomes one of Federal law when the foreign corporation contends that the assertion of jurisdiction violates the Fourteenth Amendment.

7. One is reminded of Henry W. Grady's celebrated description of the burial of a North Georgia farmer. The deceased was laid out in a New York coat, Boston shoes and Chicago breeches. The coffin came from Cincinnati; the nails and shovel from Pittsburgh; the tombstone from Vermont. "The South didn't furnish a thing for that funeral but the corpse and the hole in the ground."